**UNITED STATES of America,
Appellee,**

v.

**Michael J. WEATHERFORD et al.,
Appellants.**

**Nos. 72–1080 to 72–1082.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 26, 1972.

Decided Dec. 19, 1972.

Rehearing Denied in Nos. 72–1080 and 72–1081 Jan. 17, 1973.

48

Richard Heide, J. Frederick Hoffman, Lafayette, Ind., for appellants.

James R. Thompson, U. S. Atty., Glynna W. Freeman, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before CASTLE, FAIRCHILD and KILKENNY *, Circuit Judges.

KILKENNY, Circuit Judge:

Appellants were indicted, tried by a jury and convicted of violating 18 U.S.C. § 922(g)(1), which prohibits the transportation of firearms or ammunition in interstate commerce by persons who have been convicted of a crime punishable by imprisonment for a term exceeding one year. Prior to the commission of the offenses here under scrutiny, each of the appellants had been convicted in the state courts of Indiana of at least one felony falling within the purview of the statute.

## BACKGROUND

On the morning of October 29, 1970, in West Lafayette, Indiana, a deputy sheriff observed appellants in Trader Horn's, a sporting goods store dealing in, among other things, guns and ammunition. After appellants, and a companion, entered the store, the officer heard one of them order some ammunition. He did not know who gave the order. Shortly thereafter, he observed the group in a gasoline service station in the blue panel truck in which they were subsequently arrested. Knowing that appellants were convicted felons, the officer called his superior at headquarters

---

* Senior Circuit Judge John F. Kilkenny of the Ninth Circuit, sitting by designation.

and reported these observations. Following through on this information and information that appellants were planning a hunting trip to South Dakota, three officers looked for, soon located and then placed under surveillance the blue panel observed by the first officer at the gasoline station. Attached to the vehicle was a U-Haul trailer. Leaving West Lafayette, the appellants drove the vehicle and trailer approximately 100 miles to the Indiana-Illinois border.[1] Except for one stop light, the vehicle did not stop nor did appellants leave it once it left West Lafayette. Approximately one mile west of the border the federal, and other, officers had set up a road block and there stopped the vehicle. Two of appellants were in the front seat. Two others emerged from the body of the panel, through the door opened by the police. Upon being informed that the police had reason to believe that they were transporting guns, appellant Michael Weatherford said: "The guns are in the truck, but they are not mine." The door of the van was left open when he and the fourth man emerged. Shortly thereafter, Officer Dygrych, the Supervisor of the Alcohol, Tobacco and Firearms Division of the United States Treasury Department, observed five rifles and a handgun through the open door of the panel. Appellants' motion to suppress was denied. At the time of the trial, three of the rifles and one of the handguns and the ammunition purchased at Trader Horn's were admitted in evidence.

## CONTENTIONS

We respond to appellants' contentions in the order set forth in their brief.

 (I) First, appellants argue that there was no probable cause for stopping the vehicle. We disagree. The question presented is whether the arresting officers, in the exercise of their expertise, had reasonably trustworthy information sufficient to warrant a reasonable belief that appellants were committing a crime and that evidence of the crime was in the vehicle. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). The officers knew that appellants were convicted felons and that at least one of the group had ordered ammunition for firearms from the clerk of the sporting goods store. The officers knew that appellants had stopped at a gasoline station, presumably for gasoline and that appellants were transporting at least ammunition, and were probably transporting guns. As emphasized by the trial judge, you wouldn't ordinarily order ammunition if you didn't have a gun with which to use it. Beyond that, the officers had more than a suspicion that the group was going on a hunting trip to South Dakota. To a good police officer that would indicate that more than one gun was probably involved. On the totality of circumstances, we hold that the officers had probable cause to stop the vehicle. The authorities cited by appellants do not fit our factual background.

(II) Appellants' Points (2) [were the guns seized incident to a lawful arrest], (3) [were the guns in plain view], and (4) [was the seizure valid under the moving vehicle exception] are so interrelated that they must be treated together.

 Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), emphasized by appellants, recognizes the well established rule that contraband illegally transported in an automobile or vehicle may be searched for, without a warrant, provided that the seizing officer has reasonable or probable cause for believing that the vehicle which he stops has contraband therein, which is being illegally transported. Coolidge, supra, p. 458, 91 S.Ct. 2022, quoting from Carroll v. United States, 267 U.S. 132, 153–156, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Here, as dis-

---

1. Appellant Harvey was driving.

tinguished from Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L. Ed.2d 777 (1964), the search of the vehicle was made at the place where the vehicle was stopped and in the presence of the appellants. The officers, knowing that appellants were previously convicted felons, and having probable cause to believe that appellants were transporting guns and ammunition, had a right to stop and search the vehicle for contraband. This rule was recognized as early as Carroll v. United States, *supra.* The right to search and the validity of the seizure in such case is not dependent upon the right to arrest. This right is dependent on the reasonable belief of the seizing officers that the contents of the automobile offend against the law. The *Carroll* doctrine was recognized and approved as recently as Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L. Ed.2d 419 (1970), where it is said, "In terms of the circumstances justifying a warrantless search, the Court has long distinguished between an automobile and a home or office." *Chambers,* p. 48, 90 S.Ct. p. 1979. Cooper v. California, 386 U.S. 58, 59, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), recognizes the same principle, as does Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 221, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968). There is nothing in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), purporting to modify or in any way affect the rationale of *Carroll.* For that matter, the *Chimel* court recognized the principles stated in *Carroll* and *Brinegar.* See 395 U.S. 752, 764, n. 9, 89 S. Ct. 2034. We need not pass on whether the guns were seized incident to a lawful arrest or whether the guns were in plain view. We hold that there was a valid seizure of the guns and ammunition under the moving vehicle rule first recognized in *Carroll.* On the record before us, even the vehicle itself, was subject to seizure and forfeiture. 49 U.S.C. § 781(a)(b)(2), 49 U.S.C. § 782. United States v. Edge, 444 F.2d 1372, 1375 (CA7 1971), cert. denied 404 U.S. 855,

92 S.Ct. 101, 30 L.Ed.2d 97 (1971). In *Coolidge,* the vehicle had not been moved for over a week and did not fall within the *Carroll* doctrine.

■ (III) Next, appellants argue that the officers had adequate time in which to apply for and secure a search warrant. Their argument is necessarily based on what the officers *knew* after appellants had crossed the state line, rather than the circumstances known to the officers prior to such crossing. Prior to the actual crossing, 18 U.S.C. § 922(g)(1), had not been violated by appellants. While the officers knew that appellants had ordered ammunition and were probably transporting guns and ammunition in the panel truck and had cause to believe that appellants might intend to cross the state line on Highway 80, there is nothing in the record to show they had sufficient information on the subject of crossing the state line to justify asking for a warrant in the Northern District of Indiana under Rule 41, F.R.Crim.P. Under the provisions of Rule 41, the application for a warrant must be issued within the District where the property is located. The officers could not say that the guns and ammunition were located in Illinois until after the crossing. Although their initial information was received some three hours prior to the crossing, it was the surveillance of the moving vehicle during the ensuing three hour period and the crossing of the border which led to the probable cause for stopping and searching the vehicle. We hold that the officers could not foresee with any degree of probability that appellants would actually cross the Illinois state line. This case, although distinguishable on the facts, can be likened to and compared with Chambers v. Maroney, *supra,* where the Court said:

"Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained; arguably, only the 'lesser'

intrusion is permissible until the magistrate authorizes the 'greater'. But which is the 'greater' and which the 'lesser' intrusion is itself a debatable question and the answer may depend on a variety of circumstances. For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." [399 U.S. at pp. 51–52, 90 S.Ct. at p. 1981].

Under the facts of this case, it would place an intolerable burden on police officers to require them to obtain a search warrant before stopping the vehicle. Neither Preston v. United States, *supra,* nor Dyke v. Taylor Implement Mfg. Co., *supra,* support appellants' argument.

(IV) Finally, appellants challenge the constitutionality of 18 U.S.C. § 922(g) on the ground that it creates an illegal classification of citizens in violation of the Fifth Amendment.

Conceding that United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971) upholds the constitutionality of certain segments of the legislation, appellants point to the language of the majority opinion which by-passes the issue here presented for the reason that it had not been properly raised.[2] Relying upon Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Gillette v. United States, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971); Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954); United States v. Holmes, 387 F.2d 781 (CA7 1968), cert. denied 391 U.S. 936, 88 S.Ct. 1835, 20 L.Ed.2d 856, and similar authorities, appellants argue that the statute under which the indictment was drawn is unconstitutional for the reason that it creates unreasonable classifications which tend to discriminate against persons because of the state in which they live. Their constitutional challenge is grounded on the alleged wide disparity between the states on the severity of punishment for essentially the same criminal act. For examples, they mention: (1) the theft of $150.00 in New York is a misdemeanor, while it is a felony in Louisiana, (2) the same crime is a misdemeanor in North Carolina, but a felony in New Mexico and Indiana, (3) in Illinois the same criminal activity is a misdemeanor, while in Indiana it is a felony.

At the outset, appellants are faced with the rule that the Congress has the right to regulate and exclude from interstate commerce articles, the use of which in the states for which they are destined, may be injurious to the public health, morals and welfare of that state. United States v. Carolene Products Co., 304 U.S. 144, 147, 58 S.Ct. 778, 82 L.Ed. 1234 (1938). Additionally, the Congress has great latitude in making statutory classifications in social and economic legislation. A statutory discrimination will not be set aside as violative of equal protection or due process if any state of facts reasonably may be conceived to justify it. Levy v. Louisiana, 391 U.S. 68, 71, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968); Williamson v. Lee Optical Co., 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

It seems crystal clear that the purpose of Congress in enacting this legislation was to eliminate firearms from the hands of criminals, while interfering as little as possible with the law abiding citizen. The initial legislation, enacted in 1938, being inadequate to stop the infiltration of racketeering into society, the Congress decided to better assist local authorities in their common assault against crime by passing in 1961 an act to strengthen the Federal Firearms Act.[3] By this Act, the initial legislation was amended so as to delete the words

---

2. 404 U.S. 339, 92 S.Ct. 515.

3. 75 Stat. 757.

"crime of violence" and substitute therefor the words " 'crime punishable by imprisonment for a term exceeding one year.' " The Senate Report made it clear that the amendment was added to " . . . make it more difficult for the criminal elements of our society to obtain firearms."

■ It is our belief that the classification created by this legislation is both reasonable and practical. The 1965 legislation [4] concerning the same subject, made it possible for those who could show that their past record was comparatively innocuous to gain exclusion from the Act. Appellants did not seek the benefit of this legislation. In our opinion, there is no fundamental right to transport weapons and ammunition in interstate commerce. Manifestly, there is no basic civil right to transport weapons such as there is to exercise a voting privilege.

■ We have no difficulty in holding that the section under consideration is not constitutionally infirm as a denial of equal protection to appellants under the Fifth Amendment. United States v. Giannini, 455 F.2d 147 (CA9 1972); Stevens v. United States, 440 F.2d 144 (CA6 1971); United States v. Synnes, 438 F.2d 764 (CA8 1971) [5]; United States v. Karnes, 437 F.2d 284, 287 (CA9 1971), cert. denied 402 U.S. 1008, 91 S.Ct. 2189, 29 L.Ed.2d 430, and United States v. Thoresen, 428 F.2d 654 (CA9 1970), support this view.

Appellants other arguments on the constitutionality of the legislation [6] have received our consideration and we find them without merit. United States v. Karnes, supra; United States v. Thoresen, supra.

The judgment appealed from is affirmed.

4. 79 Stat. 788.

5. Vacated on other point, 404 U.S. 1009, 92 S.Ct. 687, 30 L.Ed.2d 657 (1972).

6. (1) That the statute is constitutionally over-broad by including felons whose prior crimes do not involve firearms or violence.
 (2) That the statute's exclusion of cer-

tain misdemeanors and business regulation convictions render it unconstitutional for too narrowly defining the class of application, and
 (3) That the statute's reliance on the state's definition of felonies and misdemeanors denies the appellants their Fifth Amendment rights.