UNITED STATES of America,
Plaintiff-Appellee,

v.

THREE WINCHESTER 30–30 CALIBER
LEVER ACTION CARBINES, etc.,
Defendant-Appellant,

and

Edgar Allen Tucker, Intervening
Defendant-Appellant.

No. 73–2088.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 19, 1974.

Decided Oct. 31, 1974.

Raymond H. Thoenig, Wisconsin Indian Legal Services, Madison, Wis., for defendant-appellant.

William J. Mulligan, U. S. Atty. and John A. Nelson, Asst. U. S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before SPRECHER and TONE, Circuit Judges, and PERRY,* Senior District Judge.

SPRECHER, Circuit Judge.

The United States brought this action in accordance with 26 U.S.C. § 7401[1]

seeking to have three Winchester rifles condemned and forfeited pursuant to the provisions of 18 U.S.C. § 924(d).[2] As a basis for this forfeiture action the government relies on a violation of 18 U.S.C. App. § 1202(a)(1), which makes it illegal for a convicted felon to possess any firearm.[3] Jurisdiction is based on 28 U.S.C. § 1345.[4]

## I

The essential facts of this case were established by stipulation. The defendant is the same individual who had been convicted of a felony in municipal court in Milwaukee, Wisconsin on March 25, 1954. The felony was the crime of carnal knowledge and abuse. On April 7, 1970, agents of the Commissioner of the Internal Revenue Service seized from the defendant's residence in Milwaukee three Winchester 30–30 Caliber lever carbines, which were at that time owned by the defendant. Thereafter this forfeiture action was commenced. The defendant is a member of the Menominee Indian Tribe who used the weapons for hunting in Menominee County, a former Menominee Indian reservation.

■ The defendant appeals from the order of the district judge condemning as forfeited to the United States the three Winchester rifles, asserting two grounds for reversal: First, that there was no evidence from which the district judge could conclude that the seized firearms were involved in interstate commerce. Second, because of his status as

---

\* Senior District Judge Joseph Sam Perry of the Northern District of Illinois is sitting by designation.

1. 26 U.S.C. § 7401 provides:
   No civil action for . . . forfeiture, shall be commenced unless the Secretary or his delegate authorizes or sanctions the proceedings and the Attorney General or his delegate directs that the action be commenced.

2. 18 U.S.C. § 924(d) provides:
   Any firearm or ammunition involved in or used or intended to be used in, any violation of the provisions of this chapter or any rule or regulation promulgated thereunder, or any violation of any other criminal law of the United States, shall be subject to seizure and forfeiture . . . ..

3. 18 U.S.C. App. § 1202(a) provides:
   Any person who—
   (1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony, . . . and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

4. 28 U.S.C. § 1345 provides in part:
   [T]he district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States . . . .

an Indian and certain rights granted by treaty to the Menominee Indians that the combined effect of 18 U.S.C. App. § 1202(a)(1) and 18 U.S.C. § 924(d) are not applicable to him.[5] We see no merit in either contention and accordingly affirm the order of the district court.

## II

18 U.S.C. § 924(d) provides that any firearm involved in a violation of a criminal law of the United States is subject to seizure and forfeiture. The criminal offense upon which the government has based its action is 18 U.S.C. App. § 1202(a)(1), which prohibits a convicted felon from "receiv[ing], possess[ing], or transport[ing] in commerce or affecting commerce . . . any firearm." The defendant argues that there is no basis in the record upon which the district judge could ascertain that the rifles involved here moved in commerce.

The record reveals that written in hand on the bottom of the typed stipulations submitted on behalf of the government and defendant is the following:

> The three Winchester rifles . . . were manufactured by the Winchester Western Corporation in New Haven, Connecticut, and were purchased by the claimant in December of 1969 and January of 1970, in Milwaukee, Wisconsin.

Next to this paragraph is the handwritten entry "Added per stipulation—TSJ." At oral argument counsel for the government informed this court that TSJ

were the initials of the district judge's law clerk.

Also part of the record on this appeal is a letter from assistant United States Attorney, David J. Cannon to Judge Myron L. Gordon setting forth the above added stipulation, and representing that this addition was made by agreement of the parties. The letter bears a designation of "cc: Attorney John A. Udovc" who was defendant's trial counsel.[6] At oral argument defendant's counsel on appeal told the court that "[trial counsel] informed me that further stipulation was not made . . . he informed me later that he did receive a copy of the letter."

■ It is, of course, generally true that a stipulation is an agreement between the parties, and that there must be mutual assent by the parties. Winchester Drive-In Theater, Inc. v. Twentieth Century-Fox Film Co., 232 F.Supp. 556 (N.D.Cal.1964), rev'd on other grounds, 351 F.2d 925 (9th Cir. 1965), cert. denied. 382 U.S. 1011, 86 S.Ct. 620, 15 L.Ed.2d 526 (1966); Holland Banking Co. v. Continental National Bank, 9 F.Supp. 988 (W.D.Mo.1934). Here we have a case where it is admitted by defendant's attorney that trial counsel did in fact receive a copy of the letter containing the added stipulation which was sent to the trial judge. The defendant did not at that time object or inform the trial court that no stipulation had been made, and now on appeal claims that the trial judge should not have considered the stipulation.

---

5. Apparently at the district court level the defendant argued that 18 U.S.C. App. § 1202 was invalid as an "infringement of the second amendment's protection of the right to bear arms, the first amendment's prohibition of bills of attainder and ex post facto laws, and the fourteenth amendment's due process clause." These arguments were appropriately rejected. Cody v. United States, 460 F.2d 34 (8th Cir.), cert. denied, 409 U.S. 1010, 93 S.Ct. 454, 34 L.Ed.2d 303 (1972); United States v. Synnes, 438 F.2d 764 (8th Cir. 1971), vacated on other grounds, 404 U.S. 1009, 92 S.Ct. 687, 30 L.Ed.2d 657 (1972). These issues have not been raised on appeal.

6. Defendant argues that this letter to Judge Gordon is not properly before this court because it was not part of the original record in this case. We note that the letter to Judge Gordon was sent to this court from the clerk of the district court with instructions that it be included in the appeal record. Fed.R.App.P. 10(e) provides in part: "If anything material . . . is omitted from the record by error or accident . . . the district court either before or after the record is transmitted to the court of appeals . . . may direct that the omission . . . be corrected . . .."

■■ The failure to object to the introduction of evidence at trial waives most objections. United States v. Young, 471 F.2d 109 (7th Cir. 1972, cert. denied, 412 U.S. 929, 93 S.Ct. 2755, 37 L.Ed.2d 156 (1973); United States v. Richman, 369 F.2d 465 (7th Cir. 1966); United States v. Doran, 299 F.2d 511 (7th Cir.), cert. denied, 370 U.S. 925, 82 S.Ct. 1563, 8 L.Ed.2d 504 (1962). In this case timely objection on the part of defendant's counsel as to the form of the stipulation would have allowed the government to correct its technical error in not obtaining defendant's signature on the amended stipulation.

We cannot see how requiring trial counsel to object to a representation made to a trial judge that a stipulation of a material fact has been entered into, when it is claimed that it has not, is burdensome. *See generally* Bullock v. Northern Insurance Co., 331 F.2d 431 (10th Cir. 1964). Any other rule would be tantamount to allowing defendant's counsel to entrap the government in an error which could have been easily rectified and of which defendant's counsel was well aware.

■ In this case there is no indication that defendant's counsel raised the issue before Judge Gordon and we believe it was proper for him to consider the added stipulation. We therefore conclude that there is a sufficient basis in the record to find that the firearms in question did move in interstate commerce.[7]

### III

The second question is whether the defendant's status as a Menominee Indian exempts him from the combined effect of 18 U.S.C. App. § 1202(a)(1), making it a crime for a convicted felon to receive or possess a firearm, and 18 U.S.C. § 924(d), the federal forfeiture provisions. We conclude that it does not.

■ It is well settled that a federal statute of general applicability is applicable to the native American. FPC v. Tuscarora Indian Nation, 362 U.S. 99, 116, 80 S.Ct. 543, 4 L.Ed.2d 584 (1960); Walks on Top v. United States, 372 F.2d 422, 425 (9th Cir.), cert. denied, 389 U.S. 879, 88 S.Ct. 109, 19 L.Ed.2d 170 (1967). This is so unless there exists some treaty right which exempts the Indian from the operation of the particular statutes in question.[8] Squire v. Capoeman, 351 U.S. 1, 6, 76 S.Ct. 611, 614,

---

7. At oral argument the defendant argued that the stipulation did not indicate whether the movement in interstate commerce occurred after the effective date of 18 U.S.C. App. § 1202. No such proof is necessary. In United States v. Bass, 404 U.S. 336, 350, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), the Supreme Court said "the Government meets its burden . . . if it demonstrates that the firearm received has previously traveled in interstate commerce." The Sixth Circuit has interpreted both *Bass* and the statute as requiring no proof that the firearms in question moved after the effective date of the Act. United States v. Day, 476 F.2d 562 (6th Cir. 1973). *See also* United States v. Walker, 489 F.2d 1353 (7th Cir. 1973), cert. denied, 415 U.S. 982, 94 S.Ct. 1574, 39 L.Ed.2d 879 (1974).

8. There is considerable authority for the proposition that a federal statute enacted subsequent to a treaty supercedes any provisions of the treaty that are inconsistent. Reid v. Covert, 354 U.S. 1, 18, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957). There is,

however, authority on the other side holding that an intention to abrogate or modify a treaty is not to be lightly imputed to the Congress. Pigeon River Improvement, Slide & Boom Co. v. Charles W. Cox, Ltd., 291 U.S. 138, 54 S.Ct. 361, 78 L.Ed. 695 (1934); Lone Wolf v. Hitchcock, 187 U.S. 553, 23 S. Ct. 216, 47 L.Ed. 299 (1903); Ward v. Race Horse, 163 U.S. 504, 511, 16 S.Ct. 1076, 41 L.Ed. 244 (1896).

Neither plaintiff nor defendant have referred us to any legislative history of either 18 U.S.C. App. § 1202(a)(1) or 18 U.S.C. § 924(d) which indicates that Congress gave any special consideration to the status of Indian treaties when it passed either of these statutes (both of which passed subsequently to the Treaty of 1854 with the Menominee Indians). This being so we do not rely on either presumption in reaching our decision. Instead, we consider whether in fact any treaty right has been abrogated, the extent of any such abrogation, and finally the purpose to be served by the challenged congressional acts.

100 L.Ed. 883 (1956); Commissioner v. Walker, 326 F.2d 261, 263 (9th Cir. 1964).

The defendant relies on the 1854 Treaty of Wolf River between the United States and the Menominee Indians. 10 Stat. 1064 (May 12, 1854). The treaty provides that the Indians are to be ceded a tract of land lying upon the Wolf River "to be held as Indian lands are held . . . ." *Id.* The Supreme Court has interpreted this language to mean that the Menominee Indians retain the right to hunt and fish upon the ceded land. Menominee Tribe of Indians v. United States, 391 U.S. 404, 406, 88 S. Ct. 1705, 1707, 20 L.Ed.2d 697 (1968). It is the defendant's position that incidental to this right to hunt is the right to possess firearms, and therefore he should be exempt from criminal liability under 18 U.S.C. App. § 1202(1)(a) and the forfeiture provisions of 18 U.S.C. § 924(d).

In *Menominee Indian,* the Supreme Court affirmed a Court of Claims judgment that the State of Wisconsin could not through the enforcement of its hunting and fishing regulations extinguish the hunting and fishing rights of the Menominee Indians. The Menominee Termination Act of 1954, 25 U.S.C. §§ 891–902 removed the Menominee reservation from federal control, and gave to the state general jurisdiction over the area. One of the reasons why the Court rejected the argument that the Termination Act gave authority to the State of Wisconsin to impose hunting and fishing regulations was because of the existence of Public Law 280, 18 U.S.C. § 1162. Public Law 280 provides that the State of Wisconsin should have jurisdiction over offenses committed by Indians, with the exception that the State is not authorized to deprive any Indian or tribe of any federal treaty right with "respect to hunting, trapping or fishing . . . ." *Id.* § 1162(b). Thus, it is clear that the *Menominee Indian* decision rests primarily on the fact that a state, contrary to federal law, was imposing restrictive regulations on the hunting and fishing rights as established by the treaty with the Menominee tribe. In the present case federal criminal laws are involved and nothing in Public Law 280 or any other law precludes their application to Menominee Indians.

Furthermore, the Menominee Indian Termination Act was not a law of general applicability, but rather one of special application to the Indians. It is not surprising that the Supreme Court limited its effect so it would not place Indian treaty rights regarding hunting and fishing at the whim of a state legislature. In this case we deal with federal laws of general applicability which have nothing to do with the regulation of any Menominee Indian treaty right. Any effect on the defendant's right to hunt is merely incidental, and applicable only to him. The treaty rights allegedly abridged belong to the tribe as a whole and not to any one individual. Whitefoot v. United States, 155 Ct.Cl. 127, 293 F.2d 658, 663 (1961), cert. denied, 369 U.S. 818, 82 S.Ct. 629, 7 L.Ed.2d 784 (1962). Here the government has not made the exercise of a treaty right illegal, but rather the defendant's own actions have limited him from participating fully in his tribe's hunting rights. Thus, this case is unlike *Menominee Indian* and others where governmental regulations affected the entire tribe's treaty rights.

The defendant further contends that his right to hunt and fish can only be limited by laws that are reasonable and necessary to serve a legitimate government interest, *See* Puyallup Tribe v. Department of Game, 391 U.S. 392, 88 S.Ct. 1725, 20 L.Ed.2d 689 (1968); Tulee v. Washington, 315 U.S. 681, 62 S.Ct. 862, 86 L.Ed. 1115 (1942), and that since the state conviction underlying his violation of 18 U.S.C. App. § 1202(a)(1) did not involve the use of firearms, it is not "reasonable or necessary" for the government to institute forfeiture proceedings against his three rifles pursuant to 18 U.S.C. § 924(d).

If there is a legitimate governmental interest in applying 18 U.S.C. App. §

1202(a)(1) and 18 U.S.C. § 924(d) to the defendant and his rifles, the treaty of Wolf River will not prevent its application. *Puyallup, supra; Tulee, supra.* In the instant case the Congress has made a reasonable determination that convicted felons should not be able to possess, receive or transport firearms. United States v. Craven, 478 F.2d 1329 (6th Cir.), cert. denied, 414 U.S. 866, 94 S.Ct. 54, 38 L.Ed.2d 85 (1973); United States v. Weatherford, 471 F.2d 47 (7th Cir. 1972), cert. denied, 411 U.S. 972, 93 S.Ct. 2144, 36 L.Ed.2d 695 (1973); United States v. Donofrio, 450 F.2d 1054 (5th Cir. 1971); United States v. Synnes, 438 F.2d 764 (8th Cir. 1971), vacated on other grounds, 404 U.S. 1009, 92 S.Ct. 687, 30 L.Ed.2d 657 (1972). We can see no basis on which to hold that that decision is only reasonable and necessary when applied to non-Indian felons. Defendant's Indian status does not remove him from the operation of the challenged statutes.

For the foregoing reasons the judgment of the district court is affirmed.