**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Agapita CANTU et al., Defendants-Appellees.**

No. 74–2037.

United States Court of Appeals, Seventh Circuit.

Argued April 16, 1975.

Decided July 22, 1975.

Rehearing Denied Aug. 28, 1975.

Certiorari Denied Dec. 15, 1975. See 96 S.Ct. 569.

James R. Thompson, U. S. Atty., Gary L. Starkman, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellant.

Richard F. Walsh, Fed. Defender Program, J. Dillon Hoey, Ira S. Gilbert, Chicago, Ill., for defendants-appellees.

Before FAIRCHILD, Chief Judge, and CUMMINGS and SPRECHER, Circuit Judges.

SPRECHER, Circuit Judge.

The United States has appealed an order suppressing statements taken by agents of the Immigration and Naturalization Service after the warrantless arrest of defendants Agapita Cantu, Manuela Rios-Cantu, and Guadalupe Luna and the warrantless search of Cantu's automobile. The only question for review here is whether the agents acted within their authority. The district court, believing the agents did not, granted a suppression order. We reverse.

I

On April 24, 1974, an informant told Ralph Traslavina, an INS criminal investigator, that Agapita Cantu and two companions were preparing to transport illegal Mexican aliens to the Midwest. The informant provided Traslavina these details. Three United States citizens, Cantu, her daughter and a male companion, planned to drive four to six Mexican aliens from the Texas-Mexican border to Aurora, Illinois. They would use a green 1969 Dodge station wagon with a license-applied-for sticker and they would take Highway 55, exiting at Highway 30 in Illinois.

For the next two days news of the defendants' progress preceded them. Between April 24 and April 26, the informant telephoned Traslavina three to five times. All his messages confirmed the details he had originally disclosed and provided the location of defendants' automobile as it moved northward on Highway 55. Traslavina also received a telegram from INS authorities in Texas. They independently verified the presence of defendants' car near the Mexican border.

Finally, on April 26, Traslavina with other INS agents arrested the defendants. Late on the 25th they had taken up a position on Highway 55 south of Aurora and waited for Cantu's party to pass. At 6:00 a. m. on the 26th, they saw the green Dodge station wagon approach. They stopped it and identified themselves. The agents first warned Cantu and the two individuals sitting in the front seat of the automobile with her, Manuela Cantu and Guadalupe Luna, that they were suspected of violating federal immigration laws. They then arrested them, taking into custody their six passengers as well, all of whom were Mexican citizens illegally in the United States.

The defendants were indicted for knowingly transporting within the United States by automobile an alien not lawfully entitled to enter or reside within the United States. 8 U.S.C. § 1324(a)(2).[1] All moved promptly to suppress as evidence any statements or

---

1. 8 U.S.C. § 1324(a)(2) provides:

    (a) Any person, including the owner, operator, pilot, master, commanding officer, agent, or consignee of any means of transportation who—

       \*    \*    \*    \*    \*    \*

    (2) knowing that he is in the United States in violation of law, and knowing or having reasonable grounds to believe that his last entry into the United States occurred less than three years prior thereto, transports, or moves, or attempts to transport or move, within the United States by means of transportation or otherwise, in furtherance of such violation of law . . . ..

confessions made by the occupants of Cantu's automobile as well as all persons and papers seized from it. They argued that the warrantless arrests were unlawful, lacking sufficient probable cause.

The district court granted the defendants' motion. The agents, the court believed, had sufficient advance notice to obtain arrest and search warrants. Probable cause attached sometime on April 24, two days before the arrests were made. Consequently, all evidence obtained in the search of Cantu's automobile, Mexican aliens, as well as any statements made by them, the court ordered suppressed. This appeal followed pursuant to 18 U.S.C. § 3731.[2]

## II

The government contends the warrantless arrests of defendants were authorized. 8 U.S.C. § 1357(a)(4) specifically provides that an INS agent shall have the power without warrant:

> [T]o make arrests for felonies which have been committed and which are cognizable under any law of the United States regulating the admission, exclusion, or expulsion of aliens, if he has reason to believe that the person so arrested is guilty of such felony and if there is likelihood of the person escaping before a warrant can be obtained for his arrest, but the person arrested shall be taken without unnecessary delay before the nearest available officer empowered to commit persons charged with offenses against the laws of the United States. Any such employee shall also have the power to execute any warrant or other process issued by an officer under any law

regulating the admission, exclusion, or expulsion of aliens.

The government urges that the arrests met the two requirements which the statute sets for a lawful warrantless arrest: (1) the INS agents had reason to believe a felony was committed, and (2) there was a likelihood of defendants escaping before an arrest warrant could have been obtained.

### A

■ Clearly the agents had reason to believe a felony was committed. The district court found that they had and with good reason. The words of the statute "reason to believe" are properly taken to signify probable cause. *Au Yi Lau v. United States Immigration and Naturalization Service*, 144 U.S.App.D.C. 147, 445 F.2d 217, 222 (1971); *cf. United States v. Guana-Sanchez*, 484 F.2d 590 (7th Cir. 1973). Violation of 8 U.S.C. § 1324(a)(2) for which the defendants were later indicted is a felony. Just as clearly, the agents had probable cause. Traslavina's informant was reliable. He had already provided the Service with information which resulted in four convictions and numerous deportations, and his information concerning Cantu was very detailed. Furthermore, the INS had independently verified his tips. *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

### B

■ The likelihood of defendants escaping is a more troublesome question. This is a statutory limitation.[3] It is al-

---

**2.** 18 U.S.C. § 3731 provides in part:

> An appeal may be taken by and on behalf of the United States from the district courts direct to the Supreme Court of the United States in all criminal cases in the following instances:
>
> *   *   *   *   *   *
>
> From an order, granting a motion for return of seized property or a motion to suppress evidence, made before the trial of a person charged with a violation of any law

of the United States, if the United States attorney certifies to the judge who granted such motion that the appeal is not taken for purposes of delay and that the evidence is a substantial proof of the charge pending against the defendant.

**3.** This limitation is not constitutionally mandated. No general warrant requirement governs arrests. *United States v. Hall*, 348 F.2d 837 (2d Cir. 1965); *United States ex rel. Falconer v. Pate*, 319 F.Supp. 206, 212 (N.D.Ill.

ways seriously applied. *Diogo v. Holland*, 243 F.2d 571 (3d Cir. 1957); *Hon Keung Kung v. INS*, 356 F.Supp. 571 (E.D.Mo.1973); *Taylor v. Fine*, 115 F.Supp. 68 (S.D.Cal.1953). The district court interpreted this provision restrictively, finding no likelihood that defendants would escape. During the two days defendants were on the road, all the reports Traslavina received confirmed the details of his informant's initial tip. Also, Traslavina could chart defendants' path and so predict that defendants' final destination was Aurora. His informant had initially told him so and nothing that had happened since then would cause him to doubt it.

The government argues there was a likelihood of escape. Until the agents actually saw Cantu in her Dodge station wagon on Highway 55, they had only suspicions of defendants' unlawful conduct. Only after seeing her and corroborating their informant's tip did they have probable cause for an arrest. At this point, the government argues, there was no time to obtain a warrant.

The government believes that *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), and *United States v. Weatherford*, 471 F.2d 47 (7th Cir. 1972) support its position. In *Draper* a federal narcotics agent was held to have probable · cause for arrest even though he relied almost exclusively on information from an informant. The agent corroborated the information personally just prior to the arrest. In *Weatherford*, a warrantless arrest and search of defendant's automobile were held valid although federal officers had more than three hours to obtain a warrant.

The warrantless arrests and searches upheld in these two cases are distinguishable from the warrantless arrests of Cantu and her associates. In *Draper*,

probable cause matured very late, at the moment the federal agent actually saw Draper and thus confirmed his informant's tip. In Cantu's case, probable cause matured much earlier. The information provided by Traslavina's reliable informant was corroborated by INS officials on the 24th, two days before Traslavina made his arrests.

In *Weatherford*, the defendant was convicted of violating 18 U.S.C. § 922(g)(1) an essential element of which is interstate transportation. The interstate element was lacking when the federal agents were first tipped off. They needed to wait for Weatherford to cross from Illinois to Indiana before apprehending him. His arrest came swiftly afterwards. Cantu and her companions could have been arrested at any time after they picked up the six illegal aliens at the border. 8 U.S.C. § 1324(a)(2) only requires transportation "within the United States."

Nevertheless, the likelihood of escape was a serious threat. From the time Traslavina received his informant's telephone tip until the time defendants were arrested, Cantu and her companions were highly mobile. Throughout the entire two-day period they were in a moving car, possessing the capacity to change momentarily their location and direction. They travelled a heavily-trafficked interstate highway system at high speeds and for a great distance. From one moment until the next their location was uncertain and their destination not entirely predictable. Until the agents knew if, where and when they would observe the defendants and finally confirm the fact that they were in a position to arrest and search them, procurement of a warrant would have been premature.[4] Once the defendants were seen, they were promptly arrested. At that point, the situation fell within the

---

1970), *aff'd mem.*, 478 F.2d 1405 (7th Cir. 1973), *cert. denied*, 414 U.S. 1094, 94 S.Ct. 726, 38 L.Ed.2d 551 (1973). *But cf. United States v. Watson*, 504 F.2d 849 (9th Cir. 1974), *cert. granted*, 420 U.S. 924, 95 S.Ct. 1117, 43 L.Ed.2d 392 (1975).

4. Other agents in other states conceivably could have arrested the defendants earlier but that is not this case.

language "likelihood of escaping before a warrant can be obtained."

Since the agents had probable cause to believe a felony involving the unlawful admission of aliens into the United States was being committed, and since the agents had grounds for reasonably believing defendants might escape, the warrantless arrest was a proper exercise of their authority and the search incident to it was lawful. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Therefore, the suppression order of the district court is reversed.

Reversed.