**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Gary O. McKENZIE, Defendant–**
**Appellant.**

No. 95–3252.

United States Court of Appeals,
Seventh Circuit.

Argued Aug. 6, 1996.

Decided Oct. 17, 1996.

Stephen A. Ingraham (argued), Office of the United States Attorney, Milwaukee, WI, for Plaintiff-Appellee.

Joseph P. Clary (argued), Wonder Lake, IL, for Defendant-Appellant.

Before BAUER, MANION, and DIANE WOOD, Circuit Judges.

MANION, Circuit Judge.

Gary O. McKenzie ("McKenzie") pleaded guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) which prohibits "any person—(1) who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year ... [to] possess in or affecting commerce any firearm or ammunition ...." § 922(g)(1). On appeal he challenges the constitutionality of his conviction and sentence, arguing that in enacting § 922(g)(1), Congress exceeded its authority and violated due process and equal protection principles. Because Congress utilized a reasonable standard in specifying who is prohibited from possessing firearms, we affirm.

## I. Appellate Jurisdiction

■ Although neither party raised the issue, our first duty is to ensure that this court has jurisdiction over the appeal. *Horwitz v. Alloy Automotive Co.,* 957 F.2d 1431, 1435 (7th Cir.1992). McKenzie's notice of appeal was filed on September 7, 1995, more than ten days after the final judgment was docketed on August 15, 1995, and thus was untimely under Fed.R.App.P. 4(b). In support of his pro se motion for an extension of time to file an appeal, McKenzie alleged that he was deprived of his opportunity to file a timely notice of appeal because his attorney was on vacation and unreachable during the ten-day appeal period. Later, his trial counsel returned and filed a motion on McKenzie's behalf requesting the court to enter a finding of "excusable neglect" and grant McKenzie the right to appeal. Instead, the court ordered an evidentiary hearing on the "excusable neglect" issue even though McKenzie's newly appointed appellate counsel and the government contended that a hearing was unnecessary as they agreed that McKenzie's trial counsel effectively deprived McKenzie of his right to file a timely notice of appeal. After the evidentiary hearing, the district court entered an order granting McKenzie the right to appeal.

■ The district court may extend the time period for filing a notice of appeal only upon a showing of "excusable neglect." Fed. R.App.P. 4(a)(5). Although we generally give deference to a district court's finding of excusable neglect, reversal is required where granting the extension is an abuse of discretion. *See United States v. Marbley,* 81 F.3d 51, 52 (7th Cir.1996); *Varhol v. National R.R. Passenger Corp.,* 909 F.2d 1557, 1563 (7th Cir.1990). For instance, in *Marbley* we held that the district court abused its discretion because the notice of appeal failed to give any reasons to believe the neglect was excusable. *Marbley,* 81 F.3d at 52.

■ Unlike in *Marbley,* McKenzie did give a reason for his tardiness—that his attorney's absence and inaccessibility during the ten-day appeal period prevented him from instructing his attorney to file an ap-

peal.[1] Thus, this is also not a case like *Castellanos v. United States*, 26 F.3d 717, 719 (7th Cir.1994), where the record failed to show whether the defendant had requested his attorney to file a timely notice of appeal. Where the record shows (or where the government cannot dispute) that a defendant makes a timely request to an attorney to appeal, the attorney's failure to file a timely notice of appeal constitutes per se ineffectiveness of counsel. *Id.* at 719; *see United States v. Nagib*, 56 F.3d 798, 801 (7th Cir. 1995). When such circumstances are revealed by an evidentiary hearing conducted as part of a 28 U.S.C. § 2255 proceeding, the defendant may proceed "as if on direct appeal, with the assistance of counsel." *See Castellanos*, 26 F.3d at 719; *Marbley*, 81 F.3d at 52.

Apparently, McKenzie's counsel urged the district court to reach a similar result where counsel's ineffectiveness is demonstrated during the direct appeal proceedings rather than collaterally as in *Castellanos*. Indeed, McKenzie's counsel argued that the district court should allow McKenzie to proceed on direct appeal based on the reasoning of *United States v. Kaden*, 819 F.2d 813, 816 (7th Cir.1987). In *Kaden*, counsel for the defendant explained that he failed to file a timely notice of appeal because he confused the federal appellate rules with the state appellate rules. This court noted that this reason (also an ineffective assistance argument) "arguably does not rise to the level of excusable neglect." *Id.* Nevertheless, the court refused to find that the district court abused its discretion in granting the defendant's motion to extend. *Id.* The court acknowledged that it was influenced by the fact that the defendant's trial counsel "abandoned" him after his trial. *Id.* The present case appears to be analogous. By leaving town and becoming totally inaccessible during the ten-day period after trial, McKenzie's counsel effectively abandoned him during that crucial time. Thus, it was not an abuse of discretion for the district court to find McKenzie's neglect excusable and to grant an extension of time to file his notice of appeal. We thus proceed to the merits.[2]

## II. Merits of the Appeal

Because McKenzie pleaded guilty and therefore waived any challenge to the government's proof of the elements of the charged violation of § 922(g)(1), he now makes the only argument available to him by asserting a jurisdictional challenge based on the constitutionality of the underlying statute. *See United States v. Bell*, 70 F.3d 495, 496 (7th Cir.1995) (stating that a guilty plea waives all non-jurisdictional challenges to convictions). Specifically, he contends that

1.  Although the transcript of this hearing was not provided to this court and McKenzie's Jurisdictional Memorandum and Status Report did not reveal the actual basis for the district court's order, the record supports the apparent rationale that the district court granted the extension based on a finding that being effectively deprived of access to counsel during the ten-day appeal period constitutes excusable neglect.

2.  Notably, in *Castellanos*, we reminded counsel of the obligation to comply with a defendant's request to file a direct criminal appeal even if the defendant's challenge would be more prudently raised in a collateral proceeding. For instance, in *Guinan v. United States*, 6 F.3d 468 (7th Cir. 1993), we acknowledged that ineffective assistance of counsel claims ordinarily would be better served in a habeas petition. (We noted that a defendant *may* have better prospects of pursuing an ineffective assistance claim in a § 2255 petition rather than on direct appeal in cases where the record did not clearly establish counsel's poor performance, where an evidentiary hearing conducted as part of the § 2255 proceeding would more clearly establish counsel's deficient performance, or where a defendant's trial counsel also handled the direct appeal. *Id.* at 472.) Here, the district court already conducted an evidentiary hearing on the issue of McKenzie's intent to file a timely notice of appeal. Since this issue was resolved in McKenzie's favor, there would be little use in delaying the appeal for an evidentiary hearing on this issue conducted as part of a § 2255 proceeding. Moreover, McKenzie's appellate counsel is not the attorney who allegedly was ineffective in not being available to McKenzie during the appeal period. Hence, under these circumstances, we do not think the district court abused its discretion in allowing McKenzie to file his belated notice of appeal. (Indeed, this may not be the type of case contemplated in *Guinan* where a defendant would be justified in not raising the ineffective assistance claim on direct appeal.) Nevertheless, this decision does not expand our view of what constitutes "excusable neglect," as abandoning a client during the ten-day appeal period is clearly inexcusable conduct.

§ 922(g)(1) violates his right (as protected by the Fifth Amendment) to due process and equal protection because its prohibition imposed on "felons" is arbitrary, overbroad, and bears no relation to the purpose of the statute. Moreover, he contends that the statute violates the constitutional prohibitions against improper delegations of congressional authority. Because McKenzie did not raise these constitutional challenges in the district court, this court can only reverse his conviction on a showing of plain error to avoid a miscarriage of justice. *United States v. Walton,* 36 F.3d 32, 34 (7th Cir.1994).

*A. Due process and equal protection challenges based on arbitrary classification.*

McKenzie makes several challenges to the constitutionality of § 922(g)(1) based on the fact that its prohibition of firearm possession applies to any person convicted of a crime punishable for a term exceeding one year—in effect, to any person determined under state law to be a *felon.* Specifically, McKenzie argues that this classification violates equal protection principles since it is not based on either a real or substantial distinction between the persons whose prior conduct is at issue and since it fails to accord like treatment to persons similarly situated. To show the lack of uniformity and discrimination against persons subject to the statute, McKenzie provides a lengthy list of offense conduct that differs on whether it constitutes a felony depending on whether it is committed in Illinois or Wisconsin.[3]

He also argues that the classification violates the due process principle that the classification must have a fair and substantial relation to the object of the legislation. Specifically, he contends the classification bears no relation to the legislation's purpose of "enhanc[ing] the ability of law enforcement to fight violent crime and narcotics trafficking." (Def.'s Br. at 9, citing H.R.Rep. No. 99-495, 99th Cong., 2d Sess. 23 (1986), 1986 U.S.C.C.A.N. 1327.) McKenzie submits that "[w]ere the legislation barring certain people from possessing guns limited solely to felons

whose crimes caused or threatened violence, the classification might have complete relevance to the purpose." *Id.* As a result of the arbitrary classification, he further notes that such innocuous felons as adulterers in Wisconsin are subject to the legislation. *Id.* "Quite simply, the catch-all classification is based on a juridical fact that has no necessary relation to the the (sic) likelihood that the actor committed or will commit an act of violence." (Def.'s Br. at 1.) In other words, he contends that the legislation violates substantive due process principles by failing to serve its purpose due to its overly inclusive scope.

McKenzie correctly notes that legislative penalties imposed on certain classes of persons must "rest on real and not feigned differences," must "have some relevance to the purpose for which the classification is made," and must not subject the class members to wholly arbitrary treatment, *see Walters v. St. Louis,* 347 U.S. 231, 237, 74 S.Ct. 505, 509, 98 L.Ed. 660 (1954). But the Court has also noted that Congress has great latitude in making statutory classifications. Indeed, a state's statutory discrimination will not be set aside as violative of equal protection or due process if any set of facts reasonably may be conceived to justify it. *Lewis v. United States,* 445 U.S. 55, 65, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980); *McGowan v. Maryland,* 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1104–05, 6 L.Ed.2d 393 (1961); *United States v. Neary,* 552 F.2d 1184, 1192, 1194 (7th Cir.), *cert. denied,* 434 U.S. 864, 98 S.Ct. 197, 54 L.Ed.2d 139 (1977); *United States v. Weatherford,* 471 F.2d 47, 51 (7th Cir.1972), *cert. denied,* 411 U.S. 972, 93 S.Ct. 2144, 36 L.Ed.2d 695 (1973). Stated another way, since "[f]elons are not yet a protected class," "only irrational discrimination against them would violate the equal protection clause." *Baer v. City of Wauwatosa,* 716 F.2d 1117, 1125 (7th Cir.1983). Furthermore, "the Due Process Clause does not require Congress to make classifications that fit every individual with the same degree of relevance." *Jones v. United States,* 463 U.S. 354, 366, 103 S.Ct.

---

**3.** For instance, McKenzie notes that adultery and "stealing" cable television service are felonies in Wisconsin but not in Illinois.

3043, 3050, 77 L.Ed.2d 694 (1983); *see also Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161–62, 25 L.Ed.2d 491 (1970) (stating that legislative perfection in making a statutory classification is neither possible nor necessary).

Contrary to McKenzie's assertions, federal courts have addressed constitutional challenges to the federal gun-control statutes. In *Lewis,* 445 U.S. at 57, 100 S.Ct. at 916–17, the Court considered whether a conviction under 18 U.S.C. app. § 1202, a gun control statute similar to and partially overlapping § 922(g)(1), could be predicated on a prior felony obtained in violation of the petitioner's Sixth and Fourteenth Amendment rights.[4] *Id.* at 57, 100 S.Ct. at 916–17. In deciding that the constitutionality of the underlying felony conviction was irrelevant, the Court took note of Congress' concern[5] about the availability of firearms to those persons who pose a threat to community peace. *Id.* at 66, 100 S.Ct. at 921. The Court noted that Congress found a "nexus" between violent crime and "any person with a criminal record." *Id.* Therefore, the Court held that "Congress could rationally conclude that any felony conviction, even an allegedly invalid one, is a sufficient basis on which to prohibit the possession of a firearm." *Id.*

Subsequently, the Court held that the prohibitions imposed by § 922(g)(1) apply to a person who pleads guilty to a felony even if that felony is subsequently expunged pursuant to state procedures. *Dickerson v. New Banner Inst.,* 460 U.S. 103, 105, 112, 115, 103 S.Ct. 986, 987–88, 991–92, 993, 74 L.Ed.2d 845 (1983). In finding expungement irrelevant, the Court approved using state-defined felonies as the trigger for the § 922(g)(1) prohibitions, stating that they provide a "convenient, although somewhat inexact, way of identifying 'especially risky people.' " *Id.* (citing *United States v. Bass,* 404 U.S. 336, 345, 92 S.Ct. 515, 521, 30 L.Ed.2d 488 (1971)).

In addition, this circuit has rejected equal protection and due process challenges to § 922(g)(1). In *Weatherford,* 471 F.2d at 52, this court rejected the argument that § 922(g)(1) creates an illegal classification of citizens in violation of the Fifth Amendment.[6] We stated that § 922(g)(1) did not arbitrarily discriminate against previously convicted felons as a class and that "[i]t seems crystal clear that the purpose of Congress in enacting this legislation was to eliminate firearms from the hands of criminals, while interfering as little as possible with the law abiding citizen." *Id.* at 51. We also rejected the appellant's argument, also made by McKenzie, that the statute was overbroad because it included felons whose prior crimes do not involve firearms or violence. *Id.* at 52 n. 6. Subsequently, in *Baer,* 716 F.2d at 1125, we again rejected a convicted felon's substantive due process and equal protections challenges to the prohibitions of § 922(g)(1). Like McKenzie, the felon in *Baer* argued that § 922(g)(1) discriminated against felons and had no rational basis. *See also United States v. Fauntleroy,* 488 F.2d 79, 81 (4th Cir.1973) (rejecting appellant's argument that § 922(g)(1) violated the constitutional guarantee of due process in that it distinguishes felons from nonfelons).

In light of this overwhelming authority and because a statutory discrimination (not involving a suspect class or bearing on a

---

4. Section 1202 prohibits the receipt, possession, or transportation of a firearm in commerce or affecting commerce by any person who has been (1) convicted of a felony, (2) dishonorably discharged from the Armed Forces, (3) adjudged mentally incompetent, (4) who has renounced his or her citizenship, or (5) who is an illegal alien. § 1202(a)(1). The Court in *Lewis* noted that the petitioner's challenges to § 1202 could also have been brought under the like provisions of § 922(g). *See* 445 U.S. at 58 n. 4, 100 S.Ct. at 917 n. 4.

5. The legislative history of § 922 and § 1202 demonstrates Congress' "worry about the easy availability of firearms, especially to those per-

sons who pose a threat to community peace." *Ball v. United States,* 470 U.S. 856, 862, 105 S.Ct. 1668, 1672, 84 L.Ed.2d 740 (1985) (citing *Lewis,* 445 U.S. at 66, 100 S.Ct. at 921). Accordingly, "each [ ] seeks to keep a firearm from 'any person ... who has been convicted' of a felony...." *Id.*

6. This view was generally accepted among the circuits. *See id.* (citing *United States v. Giannini,* 455 F.2d 147 (9th Cir.1972)); *Stevens v. United States,* 440 F.2d 144 (6th Cir.1971); and *United States v. Synnes,* 438 F.2d 764 (8th Cir.1971) (vacated on other grounds by 404 U.S. 1009, 92 S.Ct. 687, 30 L.Ed.2d 657 (1971)).

fundamental right) will not be set aside as violative of equal protection or due process if any set of facts may be conceived to justify it, *see, e.g., Lewis,* 445 U.S. at 65, 100 S.Ct. at 921–21, McKenzie faces an uphill battle on appeal. It is thus not surprising that he ignores most of this precedent or attempts to divert our attention from it by arguing that unlike the defendants in the cases upholding the constitutionality of § 922(g), he submitted "evidence" of the unlawful classification by including in his brief a comparison list of Wisconsin and Illinois felonies. This list asserts nothing more than an argument that this court has already rejected. *See Weatherford,* 471 F.2d at 51. Moreover, this list offers no reason to reject the reasoning of the Court in upholding § 922(g)(1) convictions triggered by state-law felony convictions that are later found unconstitutional or are expunged. *See Lewis,* 445 U.S. at 57, 66, 100 S.Ct. at 916–17, 921; *Dickerson,* 460 U.S. at 115, 103 S.Ct. at 993. While states may vary on what offenses constitute felonies, Congress consistently prohibited anyone, in whatever state they are from, from possessing a firearm if they have been convicted of a crime punishable by a term exceeding one year. McKenzie has not shown that Congress was irrational in deciding that such classes of persons should not possess firearms. *See United States v. Three Winchester 30–30 Caliber Lever Action Carbines,* 504 F.2d 1288, 1293 (7th Cir.1974) (stating that in enacting § 922(g)(1) "the Congress has made a reasonable determination that convicted felons should not be able to possess, receive or transport firearms."). Thus, McKenzie has not demonstrated that § 922(g)(1) violates equal protection principles.[7] Most significantly, the disparity between what Wisconsin and Illinois consider to be felonious conduct has made no practical difference to McKenzie since both states agree on the felonious nature of his record of cocaine trafficking. Hence, he has no standing to raise the question of whether the statute's classification is unconstitutional. *Baer,* 716 F.2d at 1125 ("People are not allowed to challenge statutes or ordinances because of the consequences of applying them to other people. . . .").

We also reject McKenzie's due process argument that the federal courts upholding the constitutionality of convictions under § 922(g)(1) failed to consider that the statute's real purpose was not to prevent persons convicted of non-violent felonies from possessing firearms. Even assuming *arguendo* that Congress' ultimate goal in enacting § 922(g)(1) was not to prevent possession of firearms by those convicted of nonviolent crimes, but instead to prevent additional lawlessness and violent crime that flows from the widespread availability of firearms, Congress did not explicitly limit the reach of § 922(g)(1). That it could have is demonstrated by 18 U.S.C. § 924(e) which does impose additional penalties on persons possessing a firearm after being convicted of a *violent* felony or a *serious* drug offense. *See* § 924(e). Section 922(g)(1) is undoubtedly broader in its sweep. Arguably, by broadening the class of persons prohibited by § 922(g)(1) from possessing firearms, Congress broadened the means by which it hoped to promote its ultimate goal of preventing lawlessness and violent crimes. This reasoning is consistent with the Court's recognition of a "nexus" between violent crime and "any person with a criminal record," *Lewis,* 445 U.S. at 66, 100 S.Ct. at 921, and with the Court's acceptance of the broad scope of § 922(g)(1)'s felon classification as a means to identify "especially risky people," *Dickerson,* 460 U.S. at 120, 103 S.Ct. at 996. It is also instructive that the initial version § 922(g)(1) was amended so as to delete the words "crime of violence" and substitute therefore the words "crime punishable by imprisonment for a term exceeding one year." *Weatherford,* 471 F.2d at 52 (citing 75 Stat. 757). Given Congress' great latitude in

---

7. We also reject McKenzie's argument that reversal is required since several of the cases cited by the government (in support of the proposition that state law variations in felony definitions do not alone demonstrate an equal protection violation) involved challenges to a different statute, namely 18 U.S.C. § 924(e), which provides increased penalties for persons who violate § 922(g) after being thrice convicted of *violent* felonies and *serious* drug offenses. § 924(e). The government reliance on these cases does not undermine the precedent in this circuit as well as in the Supreme Court rejecting McKenzie's arguments.

making statutory classifications, there is no plain error in accepting these justifications for the broad classification.

### B. Improper delegation of authority.

McKenzie also contends that Congress improperly delegated authority to the states to define elements of a federal crime. He points to 18 U.S.C. § 921(a)(20), which states: "What constitutes a conviction of [a crime punishable by imprisonment for a term exceeding one year] shall be determined in accordance with the law of the jurisdiction in which the proceedings were held." His argument is that since the application of § 922(g)(1) ultimately hinges on state law, Congress failed its duty to define the elements of the offense. In support of his argument, he cites the Court's proclamation in *Whalen v. United States*, 445 U.S. 684, 689, 100 S.Ct. 1432, 1436, 63 L.Ed.2d 715 (1980) that "the power to define criminal offenses ... resides wholly with the Congress."

The government contends that § 922(g)(1) and § 921(a)(20) do not improperly delegate congressional authority because each state is free to classify criminal behavior as it chooses within the strictures of the Eighth Amendment. *See Rummel v. Estelle*, 445 U.S. 263, 284, 100 S.Ct. 1133, 1144–45, 63 L.Ed.2d 382 (1980). McKenzie replied that *Rummel's* discussion of the state's authority to criminalize behavior has nothing to do with his arguments challenging Congress' authority to delegate its legislative power to the states. A review of the plain language of the statute demonstrates that McKenzie's arguments lack merit. Section 922(g)(1) does not include "felony" as an element of the offense. Rather, it prohibits firearm possession by those "convicted of a crime punishable by imprisonment for a term exceeding one year." Congress, not the states, has defined the elements of the federal offense described in § 922(g)(1). Thus, while states may vary on what offenses are punishable by a term exceeding one year, it does not alter Congress' intent to keep guns out of the hands of anyone that a given state determines to be a felon. Congress controls this declaration. *See Weatherford*, 471 F.2d at 52 n. 6 (reject-

ing, without discussion, the argument that Congress improperly delegated its authority in enacting § 922(g)(1)).

Based on the foregoing, we AFFIRM McKenzie's conviction and sentence because he failed to show that the statute to which he pleaded guilty was unconstitutional.