MATTER OF AGUIRRE

In Deportation Proceedings

A-13680541

*Decided by Board February 3, 1971*

A special inquiry officer must make an independent exercise of discretion on all the facts present; the fact that section 245 adjustment of status has been granted to aliens with spouses and children in prior cases is not controlling.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2))]—Remained longer—student

ON BEHALF OF RESPONDENTS:
M. Ronald Gould, Esquire
501 Madison Avenue
New York, New York 10022

ON BEHALF OF SERVICE:
Irving A. Appleman
Appellate Trial Attorney

Stephen M. Suffin
Trial Attorney
(Brief filed)

The Immigration and Naturalization Service appeals from the decision and order of the special inquiry officer dated January 7, 1970 granting the respondent's application for status as a permanent resident alien pursuant to section 245 of the Immigration and Nationality Act. Exceptions have been taken to the grant of relief.

The respondent, a native and citizen of the Republic of the Philippines, was admitted to the United States at the port of Honolulu, Hawaii, on or about July 4, 1962 as a nonimmigrant visitor. His status was thereafter changed to that of a nonimmigrant student and he was authorized to remain in the United States until June 27, 1968. He concedes that he is deportable as charged in the order to show cause.

The special inquiry officer in a decision and order entered on October 14, 1969, found the respondent deportable as charged in the order to show cause, denied his application for suspension of deportation and ordered his deportation to the Republic of the

661

Philippines. Thereafter, the respondent was accorded a second preference classification on the basis of a visa petition submitted by his second and present wife. The proceedings were reopened to afford him an opportunity to apply for status as a permanent resident under the provisions of section 245 of the Immigration and Nationality Act.

The respondent submitted an application for adjustment of status during the hearing accorded him in January 7, 1970. The record establishes that the respondent married one Elisa Reyes in the Philippines on June 17, 1962 (Ex. 8). He was issued a non-immigrant B-2 visa by the United States Consul at Manila, Philippine Islands on July 3, 1962. He stated in his application for the nonimmigrant visa that he was single and that the length and purpose of his visit to the United States was "one month—business/pleasure trip" (Ex. 4). His wife in the Philippines bore him a child on November 15, 1962.

The respondent married Sonia Pilar Tanoja, a lawful permanent resident alien, at San Francisco, California on April 18, 1967. He did not obtain a divorce from his wife in the Philippines prior to his marriage to Sonia Pilar Tanoja. A visa petition filed by his resident alien wife for second preference classification was approved on January 16, 1968. The respondent filed an application for status as a permanent resident alien. He did not reveal his prior marriage and when examined by an immigrant inspector on April 25, 1968, he stated that he had been married only once.

An investigation by the United States Embassy in Manila, Philippine Islands revealed the respondent's prior marriage. The approval of the visa petition filed by the respondent's resident alien wife was revoked on April 14, 1969. The respondent divorced his first wife in Reno, Nevada on July 15, 1969, and remarried his resident alien wife the same month. A child was born of the union on February 22, 1968. His present wife filed a new visa petition and the respondent was again accorded status under section 203(a)(2) of the Act on December 4, 1969.

The special inquiry officer states in his opinion that the respondent is a "perjurer, bigamist and adulterer, and that he deserted his first wife and never contributed to her support." He reasons, however, that the principle of "equal justice under the law" requires him to grant relief since the Board of Immigration Appeals "repeatedly overlooks unfavorable factors in a case such as this where a United States born child is involved and/or the

spouse is a citizen or lawful resident." He cites several unreported cases in support of his action [1] and states that, "The Board sets policy in cases of this sort" (p. 2, special inquiry officer's opinion).

The Service maintains that this Board cannot dictate "policy" to the special inquiry officer where the exercise of discretion is involved, since the special inquiry officer must base his conclusions, where a matter of discretion is concerned, on an evaluation of all the facts and circumstances of the particular case before him and not on the basis of whether his interpretation of prior decisions of this Board circumscribes his individual judgment. The Service cites the Board's decision in *Matter of Vega*, 11 I. & N. Dec. 337 (BIA, 1965), in support of its argument.

The special inquiry officer cites this Board's decision in *Matter of M—*, 4 I. & N. Dec. 626 (BIA, 1952), in support of his statement that "policy" set by this Board requires him to grant relief in the respondent's case. We broadly stated in *Matter of M—*, *supra*, the considerations which normally would lead to an order of voluntary departure, as a matter of discretion, in the case of aliens who had been in the United States for a relatively short period of time and who do not have here the family ties mentioned in section 19(c)(2) of the 1917 Act, as amended. We also set forth factors which usually militate against the grant of relief in such cases. We did say in *Matter of M—*, *supra*, as quoted by the special inquiry officer, that ". . . when considering discretionary action, it is of the greatest importance in striving for justice and impartiality that all aliens whose cases are substantially similar receive like treatment." The special inquiry officer, however, failed to quote the Board's introductory statement with regard to using guidelines in the exercise of discretion. We said, at page 627:

. . . We wish to caution that what we say here is not to be taken as an *invariable rule*, but that in each case *the decision ultimately must be predicated upon the merits or demerits of that case.* . . . On this basis, we set forth a *general guide* as an *aid* toward this end. (Emphasis supplied.)

Guide lines as an aid in the exercise of discretion do not amount to the setting of "policy" in cases where the exercise of discretion is required. Discretionary action by its very nature permits wide latitude to the authority charged with its exercise.

---

[1] *Matter of Fong*, A-13727051 (BIA, 1968, unreported); *Matter of Hubert*, A-17290994 (BIA, 1968, unreported); *Matter of Emnace*, A-13597926 (BIA, 1968, unreported); *Matter of Gubatan*, A-13711191 and A-18507756 (BIA, 1969, unreported).

When such authority is bound by hard and fast rules or criteria, then its action cannot be said to be truly discretionary. As stated in *Matter of M—*, *supra*, we recognized that a close factual question is often presented with regard to the grant of relief to seamen who use that route to gain entry into the United States. We made it clear, however, that in each case the special inquiry officer's decision "ultimately must be predicated upon the merits or demerits" of the case before him. Furthermore, in *Matter of M —, supra,* we were concerned with the grant or denial of voluntary departure to deserting seamen, a type of adjudication entirely different from the grant or denial of an adjustment of status under section 245 of the Immigration and Nationality Act.

The trial attorney maintains that the respondent's case does not merit the favorable exercise of discretion since the grant of relief rewards the fraud practiced by the respondent on the United States Consul in Manila and on the Immigration Service. The appellate trial attorney requests that, since the special inquiry officer did not exercise his discretion, the Board remand the case to the special inquiry officer with a "firm" directive to perform this function.

The decision of the special inquiry officer (January 7, 1970) and the brief of the trial attorney, dated January 29, 1970, were prepared prior to our decision in *Matter of Arai*, Interim Decision No. 2027 (BIA, March 4, 1970). It appears that they were not aware of *Matter of Arai, supra,* when considering the respondent's case. In *Matter of Arai, supra,* we clarified the criteria set forth in *Matter of Ortiz-Prieto*, 11 I. & N. Dec. 317 (BIA, 1965), for the exercise of discretion under section 245 of the Act. We recognized that it is difficult and probably inadvisable to set up restrictive guidelines for the exercise of discretion. We said:

. . Where adverse factors are present in a given application, it may be necessary for the applicant to offset these by a showing of unusual or even utstanding equities. Generally, favorable factors such as family ties, hardhip, length of residence in the United States, etc., will be considered as ountervailing factors meriting favorable exercise of administrative discreion. In the absence of adverse factors, adjustment will ordinarily be granted, till as a matter of discretion.

During oral argument before the Board, counsel contended that he respondent's failure to reveal his first marriage when he applied for his nonimmigrant visa and when he originally applied or adjustment of status was not designed to deceive the Government. Counsel asserted that the respondent concealed the fact of is first marriage in his original application for adjustment of tatus solely because he did not wish to reveal the true facts to

his second wife. The record of the respondent's testimony supports this assertion (pp. 5–8). Counsel further asserted that when questioned by the consul on July 3, 1962 as to the truth of the statements previously made in his preliminary application, the respondent did not realize that he had been married in the interim. We find the respondent's testimony on this point (p.10) rather ambiguous. The facts in this regard should be further developed on remand.

After carefully considering the record and the arguments on appeal, we conclude that the case should be remanded to the special inquiry officer for further hearing as indicated and for the exercise of his discretion in light of the criteria set forth in *Matter of Arai, supra*. An appropriate order will be entered.

**ORDER:** It is ordered that the case be remanded to the special inquiry officer for a reopened hearing and for reconsideration in accordance with the foregoing opinion.