## MATTER OF KING AND YANG

### In Deportation Proceedings

A-15527215

A-15527216

*Decided by Board April 25, 1978*

(1) An immigration judge has no authority to grant immunity from criminal prosecution and he cannot reject a valid Fifth Amendment claim by purporting to bind the law enforcement agencies in their freedom to prosecute.

(2) The respondents' Oriental appearance, combined with the past history of illegal alien employment at the particular restaurant where they were encountered, and an anonymous tip, gave rise to a reasonable suspicion by a Service officer of alienage sufficient to justify the very limited invasion of privacy engendered by a nondetentional questioning.

(3) A Service official's knowledge that the respondents were not in possession of their immigration documents created a reasonable belief that the respondents were in violation of the immigration laws. This belief that a violation of the law has occurred, together with a reasonable belief that the respondents were "likely to escape," justified the officer's determination to place the respondents in custody.

(4) Under section 264 of the Immigration and Nationality Act, an alien is required to have in his possession a certificate of alien registration or alien registration receipt card and similarly, he is required to produce it to a Service officer engaged in normal and proper fulfillment of his duties. Therefore, there was no violation of the respondents' Fourth or Fifth Amendment rights when deportability was based on the information obtained as the result of a lawful detention and voluntary handing over of their Crewman's Landing Permits (Forms I-95).

(5) Inasmuch as the respondents were clearly bona fide seamen at the time of their illegal entry, they had made previous trips to the United States as seamen and had reshipped within the allotted time, they had not previously violated the immigration laws, they manifested an ability and willingness to depart voluntarily and there was nothing to show a lack of good moral character, they merited voluntary departure in the exercise of discretion.

CHARGE:

Order: Act of 1952—Section 241(a)(2), I. & N. Act [8 U.S.C. 1251(a)(2)]—Nonimmigrant crewman—remained longer [both respondents]

ON BEHALF OF RESPONDENTS:
Martin L. Rothstein, Esquire
Fried, Fragomen & Del Rey
515 Madison Avenue
New York, New York 10022

ON BEHALF OF SERVICE:
George Indelicato
Appellate Trial Attorney

BY: Milhollan, Chairman; Maniatis, Appleman, Maguire, and Farb, Board Members

In decisions dated April 21, 1976, the immigration judge found the two respondents deportable under section 241(a)(2) of the Immigration and Nationality Act as crewmen who remained longer than 29 days authorized by the Service, and denied them the privilege of voluntary departure. The two cases have been consolidated on appeal. The respondents challenge the finding of deportability, alleging that they were based upon evidence obtained in violation of the Fourth and Fifth Amendments. They also challenge the denial of voluntary departure. The appeal will be dismissed as to the finding of deportability, and sustained as to the denial of voluntary departure.

The two respondents were arrested during a Service operation at a Chinese restaurant, where they were employed as a waiter and a dishwasher. Upon being interrogated as to their alien status, both respondents stated that they were Chinese, and that their immigrations were at their common place of residence, an apartment building operated by the restaurant owner. The two respondents were then placed in detention in a Service vehicle and subsequently transported to the apartment house where, while still under detention they gave to a Service officer their Crewman's Landing Permits (Forms I–95). Based on these forms, the two respondents were arrested. These documents were the only evidence offered by the Government at the hearing to establish deportability.

At the hearings on April 21, 1976, both respondents stood mute, acknowledging only that the Orders to Show Cause had been served upon them. They based their refusal to testify upon a claim under the Fifth Amendment justified by the possibility of criminal prosecution under sections 252(c) and 264(e) of the Immigration and Nationality Act. The immigration judge sought to compel the respondents to testify, stating that the Government would be precluded from prosecution if they did so.[1] However, it is beyond the power of an immigration judge to reject a valid Fifth Amendment claim by purporting to bind the law enforcement agencies in their freedom to presecute. The immigration judge cannot grant immunity from criminal prosecution. Nonetheless, since the immigration judge apparently did not rely upon the respondents' justified silence under the Fifth Amendment in finding them deportable as charged, we do not address the issue of whether reliance upon a respondent's statements, compelled at the hearing in spite of a valid Fifth Amendment claim, would warrant reversal. The sole issue as to deportability considered on appeal is whether the two documents, the

---

[1] An alien can, because of the possibility of criminal prosecution for violation of the immigration laws, decline to testify at a deportation hearing on the basis of the Fifth Amendment. The alien may, however, unlike the criminal defendant, be required to answer nonincriminatory questions about his alien status. *Laqui* v. *INS*, 422 F.2d 807 (7 Cir. 1967).

Forms I-95 procured from the respondents, should have been suppressed.

The respondents first challenge the constitutional validity of the initial interrogation in the restaurant. At the hearing, the Service officer who conducted the interrogation testified that he obtained the consent of the owner of the restaurant to enter the cooking area. The presence of the officer on the premises, then, was clearly proper. See *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973). The officer testified that he received a letter, signed by an unknown person and with no return address, stating that there were illegal aliens employed in the restaurant. The letter was not produced at the hearing. Nevertheless, the immigration judge was free to believe the officer's testimony that the letter had been received. The officer also testified that he had, on three previous occasions, arrested illegal aliens working within the defined area of the kitchen of the restaurant. He testified further that it was his intent to interrogate any person of Oriental appearance "between the ages of 15 and 60" (Tr. of King, p. 17) who was employed at the restaurant. His interrogations of the respondents, he stated, were not occasioned by any particular actions or characteristics of the respondents which led the officer to believe that they were aliens. Rather, the respondents were interrogated because they were of Oriental appearance, and because they were employed at the restaurant.

Under section 287(a)(1) of the Immigration and Nationality Act, an officer of the Service has the power without warrant to interrogate any person believed to be an alien as to his right to be in the United States. However, it is well settled that the powers conferred on Service officers under section 287(a)(1) are circumscribed by the right of individuals under the Fourth Amendment to be free from unreasonable searches and seizures. *United States v. Brignoni-Ponce*, 422 U.S. 873 (1975). In *Brignoni-Ponce*, where the defendant challenged a vehicular stop which took place away from a fixed checkpoint, the Supreme Court held that Service officers may stop an automobile only "if they are aware of specifically articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contains aliens who may be illegally in the country." 422 U.S. at 884. Counsel argues that the standard adopted in *Brignoni-Ponce* should be applied in the present situation.

We do not have here the temporary detention of a moving vehicle involved in *Brignoni-Ponce*. See *United States v. Martinez-Fuerte*, 428 U.S. 543, 560-562 (1976). At the time the aliens were first questioned in the restaurant no detention was involved. There was a reasonable suspicion of alienage. The Service officer testified at the hearing that on three previous occasions he had participated in the arrest of illegal aliens employed by the identical establishment. The respondents' Orien-

tal appearance, combined with the past history of illegal alien employ-
ment at that particular restaurant, and the anonymous tip, clearly
would give rise to a reasonable suspicion of alienage sufficient to justify
the very limited invasion of privacy engendered by a nondetentional
questioning. *Illinois Migrant Council* v. *Pilliod,* 540 F.2d 1062, 1069–
1071 and n. 10 (7 Cir. 1976), aff'd in part and vacated in part, 548 F.2d
715 (7 Cir. en banc 1977); *United States* v. *Morales-Cuevas,* 546 F.2d
427 (9 Cir. 1976) (table); *Ojeda-Vinales* v. *INS,* 523 F.2d 286 (2 Cir.
1975); *Shu Fuk Cheung* v. *INS,* 476 F.2d 1180 (8 Cir. 1973); *Cheung Tin
Wong* v. *INS,* 468 F.2d 1123 (D.C. Cir. 1972); *Au Yi Lau* v. *INS,* 445
F.2d 217 (D.C. Cir.), cert. denied 404 U.S. 864 (1971); *Yam Sang Kwai*
v. *INS,* 411 F.2d 683 (D.C. Cir. 1969), cert. denied 396 U.S. 877 (1970).
See also *Marquez* v. *Kiley,* 436 F. Supp. 100 (S.D.N.Y. 1977).

Upon learning that the respondents were aliens, the Service officer
asked them if they were in possession of immigration documents which
could establish their status. When the Service officer was told that the
respondents' documents were at the apartment house, the respondents
were placed in the back seat of a Service vehicle from which the inside
handles had been removed. At this point they were clearly in custody.
Since the officer knew that the respondents were aliens and that they
were not in possession of their immigration documents, the officer had a
reasonable belief that the respondents were in violation of the immigra-
tion laws. See *Ojeda-Vinales, supra,* at 288; *Cheung Tin Wong, supra*
at 1128. However, under section 287(a)(2), in order to make an arrest an
officer must not only have reason to believe that a violation of the law
has occurred, but he must also reasonably believe that the individual is
"likely to escape." Due to the difficulty of making such an on-the-spot
determination, the courts have held, essentially, that an officer's deter-
mination will not be upset if there is any reasonable basis for it. *Mar-
quez* v. *Kiley, supra,* at 108. See *United States* v. *Cantu,* 519 F.2d 494 (7
Cir.), cert. denied 423 U.S. 1035 (1975); *United States* v. *Meza-Campos,*
500 F.2d 33, 34 (9 Cir. 1974); *LaFranca* v. *INS,* 413 F.2d 686, 689 (2 Cir.
1969).

Here, there was plainly a reasonable basis for the arrests not only on
the ground that the aliens might escape, but also for the purpose of
further investigation into their immigration status.

Counsel for the respondents also argues that they were compelled to
turn over their documents to the Service officer, and that, in view of the
criminal penalties which attach to out-of-status crewmen under section
252(c) of the Act, they were thereby forced to incriminate themselves in
violation of the Fifth Amendment. It has not been shown that there was
any search, or anything other than a voluntary handing over of the
documents. However, in any event, under section 264 of the Act, an
alien is required to have in his possession a certificate of alien registra-

tion or alien registration receipt card. The Form I–95 issued to crewman is such a certificate of alien registration, and is subject to the requirements of section 264. *Matter of Yau*, 14 I. & N. Dec. 630 (BIA 1974). A necessary corollary to the duty to carry this document is the duty to produce it to a Service officer engaged in the normal and proper fulfillment of his duties. *Matter of Yau, supra.* The information content of the Form I–95 is completely determined by the Government; a duplicate copy of the Form I–95 is kept by the Immigration and Naturalization Service in its records.

We note that this is a civil deportation proceeding, not a criminal prosecution for violation of section 252(c). No such prosecution has been instituted. However, even in the context of a criminal prosecution, the respondents' argument would be questionable under the "required records" doctrine. *Shapiro* v. *United States*, 335 U.S. 1 (1948). See also *Marchetti* v. *United States*, 390 U.S. 39, 57 (1968). In the context of a criminal prosecution for violating sections 262, 265, 266(a) and 266(b) of the Act, it was held that the alien registration statutes are "essentially noncriminal and regulatory provisions" which come within the "required records" doctrine. *United States* v. *Sacco*, 428 F.2d 264, 271 (9 Cir. 1970), cert. denied 400 U.S. 904. See also *United States* v. *Campos-Serrano*, 430 F.2d 173 (7 Cir. 1970), aff'd on another ground, 404 U.S. 293 (1971); *Matter of Yau, supra; Matter of Chen*, Interim Decision 2440 (BIA 1975), aff'd *Chen* v. *INS*, 537 F.2d 566 (1 Cir. 1976). See further *Fisher* v. *United States*, 425 U.S. 391 (1976); *Andresen* v. *Maryland*, 427 U.S. 463 (1976). We do not find any violation of the respondents' Fourth or Fifth Amendment rights.

The respondents also appeal from the decisions of the immigration judge denying them the privilege of voluntary departure. In denying voluntary departure, the immigration judge relied upon the fact that the respondents had been illegally in the United States for a period of one and one-half years in one case and two years in the other.

In *Matter of M—*, 4 I. & N. Dec. 626 (BIA 1952), we set out the standards which should govern the grant of voluntary departure to crewmen. Once the requisite good moral character has been established, the immigration judge should consider previous violations of the immigration laws, the ability and willingness of the respondent to depart from the United States, and whether the alien was a bona fide seaman at the time of entry. See also *Matter of Tsang*, 14 I. & N. Dec. 294 (BIA 1973); *Matter of Ocampo-Ocampo*, 13 I. & N. Dec. 661 (BIA 1971). The fact that an alien is presently in the United States illegally is clearly not a factor in determining his eligibility for voluntary departure. To so hold would lead to the anomalous result of rendering voluntary departure unavailable to all except those not subject to deportation.

We have reviewed the record in both cases, and find that the two respondents were clearly bona fide seamen at the time of their illegal entry. Both had made previous trips to the United States as seamen and had reshipped within the allotted time. Similarly, there is no evidence that either respondent has previously violated the immigration laws. Both have manifested an ability and willingness to depart from the United States if voluntary departure is allowed. There have been no suggestions that either of the respondents lack the requisite good moral character. We shall therefore sustain the respondents' appeal from the denial of voluntary departure, and grant them 30 days in which to depart voluntarily from the United States.

ORDER: The appeals are dismissed as to the finding of deportability. The appeals are sustained as to the denial of voluntary departure.

FURTHER ORDER: The respondents are permitted to depart from the United States voluntarily within 30 days from the date of this order or any extension beyond that time as may be granted by the District Director; and in the event of failure so to depart, the respondents shall be deported as provided in the immigration judge's orders.