**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 91-8067
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EMIL F. WILEY,

Defendant-Appellant.

Appeal from the United States District Court
For the Western District of Texas

(December 3, 1992)

Before POLITZ, Chief Judge, HIGGINBOTHAM and WIENER, Circuit Judges.

POLITZ, Chief Judge:

Convicted of conspiracy to pass counterfeit Internal Revenue Service obligations and of the underlying substantive offenses, Emil F. Wiley appeals. Finding no error, we affirm.[1]

---

[1]     Wiley also has filed various motions with this court, including a motion for bail, a motion to disqualify two Assistant U.S. Attorneys, a motion for a "Certificate of Reasonable Doubt," a motion to vacate the judgment, and a motion to dispose of the foregoing motions expeditiously. We grant the motion for a speedy disposition and deny all other motions.

## Background

Wiley and Roger Elvick conceived of a scenario in which various individuals would claim enormous refunds on their tax returns and execute instruments purporting to be certified IRS sight drafts against the refunds to Wiley or Elvick, who would negotiate the counterfeit drafts for legitimate negotiable instruments. Wiley sent two of these sight drafts to Thomas Nathan Cox, a business associate in Austin, Texas. The first was drawn by one Arnold Hilgeford in the amount of $990,000 and arrived via Federal Express with instructions from Wiley to open a brokerage account, to buy tax-exempt bonds and not to "use an attorney or accountant."

Cox took the draft to Prudential-Bache Securities. Its suspicions aroused by the multiple endorsements, Prudential-Bache notified the IRS and declined to accept the draft. The next day Cox was arrested by the Treasury Division of the IRS. Offering to cooperate with the government, he tendered a second package from Wiley containing another draft similar to the first, this one written by one Marvin E. Arlien to Wiley in the amount of $1,000,100.

Working with the government, Cox suggested to Wiley that he had a high school friend in the brokerage business who was willing to negotiate the drafts, further suggesting that Wiley fly to Austin to meet his friend and bring additional drafts. Wiley agreed. At a meeting at a local hotel, Wiley presented the broker, in reality an undercover agent, with three additional drafts, one

from Hilgeford to Wiley in the amount of $990,000, another from Arlien in the amount of $4,000 and a third from Elwick to Wiley in the amount of $1,000,100. Like the other drafts, these were payable through the IRS. Wiley was promptly arrested. Among his belongings was a .25 caliber Excam pistol.

Wiley was indicted for passing counterfeit United States obligations with intent to defraud, 18 U.S.C. § 472, possessing counterfeit documents with intent to defraud the United States, 18 U.S.C. § 1002, and conspiracy to engage in these offenses, 18 U.S.C. § 371. Because of a previous felony conviction, he was indicted for felony possession of a firearm, 18 U.S.C. §§ 922(g)(1) and 924(a). While in jail awaiting trial, Wiley filed a Currency Transaction Report falsely stating that the magistrate judge who had handled certain preliminary aspects of his case had engaged in a $4 million transaction with the undercover agent who had represented himself as a broker. Wiley also was indicted for this offense, 18 U.S.C. § 1001. Choosing to represent himself with the aid of stand-by counsel, Wiley was convicted by a jury on all counts and sentenced to 78 months' imprisonment. Wiley timely appealed and proceeds herein *pro se*.

## Analysis

1. Sufficiency of the indictment.

Wiley raises the instant challenges to the sufficiency of the indictment for the first time on appeal. He contends that the

3

conspiracy count charges several different crimes, that it contains language suggesting that the Internal Revenue Service, the Treasury Department, and the United States are three separate entities, and that the felony firearm count also is duplicitous.  None of these contentions has merit.

An indictment is sufficient if it (1) contains the elements of the offense charged, (2) fairly informs a defendant of the charge, and (3) enables the defendant to plead acquittal or conviction in bar of future prosecutions for the same offense.[2]  "Practical, not technical, considerations govern the validity of an indictment and the test of the validity of an indictment is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards."[3] Reviewing Wiley's indictment *de novo*, we find that it satisfies this standard.[4]  The challenged clause, that defendants "did willfully and knowingly combine, conspire, confederate and agree together and with each other and with other persons to defraud the United States by impeding, impairing, obstructing and defeating the lawful governmental functions of the Internal Revenue Service of the Treasury Department of the United States, and to commit an

---

[2] **United States v. Chaney**, 964 F.2d 437 (5th Cir. 1992).

[3] **Chaney**, 964 F.2d at 446.

[4] We are to construe the indictment liberally because Wiley did not raise these objections below. **Chaney**. However the indictment is read, it passes muster.

4

offense against the United States," does not suggest that the Internal Revenue Service, the Treasury Department and the United States are separate entities. Nor is the conspiracy count duplicitous. It cites the two underlying statutes which Wiley is charged with conspiring to violate and lists ten overt acts in furtherance of the conspiracy. This does not amount to a charge of multiple crimes in one count.

Finally, the language of the firearm count is not improper. "Where a penal statute . . . prescribes several alternative ways in which the statute may be violated and each is subject to the same punishment, . . . the indictment may charge any or all of the acts conjunctively, in a single count, as constituting the same offense, and the government may satisfy its burden by proving that the defendant, by commiting any one of the acts alleged, violated the statute."[5] That is what happened in this case. 18 U.S.C. § 922(g)(1) makes it unlawful for a convicted felon to ship, transport, receive, or possess a firearm in interstate commerce. Each is an alternative way to violate the statute; each is subject to the same punishment. The indictment charged two of these methods: transportation and possession of the Excam pistol found in Wiley's luggage. The jury was instructed that it had to find only one in order to convict. The firearm count charged Wiley with only one offense.

---

[5] **United States v. Burton**, 871 F.2d 1566, 1573 (11th Cir. 1989); see also **Fields v. United States**, 408 F.2d 885 (5th Cir. 1969).

2.  <u>Sufficiency of the evidence</u>.

Wiley contends that the evidence of conspiracy was so deficient that it effectively proved a different crime than that for which he was indicted. He also challenges the sufficiency of the evidence of intent to defraud the United States. In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict[6] and affirm if any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.[7] Applying this standard, we find the evidence more than sufficient.

Wiley maintains that there is no evidence of an agreement to commit an unlawful act. An agreement may be inferred from concert of action.[8] Therefore, Wiley's criticism that "the government relied on overwhelming the jury with evidence of the acts themselves" is misplaced. The record also contains direct evidence of an agreement between Wiley and Elvick, including Elvick's representation during a tape recorded telephone conversation with Cox that he and Wiley had worked for a number of years on the drafts and that he could "fix Emil with anything he needs" for the meeting in Austin, and Wiley's representation during that meeting

---

[6]  **Glasser v. United States**, 315 U.S. 60 (1942); **Chaney**.

[7]  **Jackson v. Virginia**, 443 U.S. 307 (1979); **Chaney**.

[8]  **United States v. Shively**, 927 F.2d 804 (5th Cir.), <u>cert</u>. <u>denied</u>, ___ U.S. ___, 111 S.Ct. 2806, 115 L.Ed. 2d 979 (1991).

that Elvick was his partner.  Indeed, Elvick joined Wiley in three recorded telephone conversations with Cox to explain the scheme.

There also was ample evidence of intent to defraud the government.[9]  Wiley knew that the drafts were demands for funds from the Internal Revenue Service; they so stated on their face and Wiley explained to Cox that they were written against IRS 1040-Forms.  There also was evidence from which a reasonable jury could conclude that he knew the demands for funds were not legitimate; he described the scheme to Cox as "a bookkeeping charade" and warned him not to involve accountants or lawyers.  Wiley argues that he merely was accepting assignments of refunds from taxpayers in private transactions.  The jurors were not obliged to accept this interpretation of the evidence.  They obviously did not.

3.  <u>Resolution of objections to PSR</u>.

Invoking Fed.R.Crim.P. 32(c)(3)(D), Wiley contends that the court failed to resolve his objections to the Presentence

---

[9]  Intent to defraud the government is an element of 18 U.S.C. § 1002.  Contrary to Wiley's arguments, it is not an element of the conspiracy offense as submitted to the jury.  18 U.S.C. § 371 may be violated in either of two ways: by a conspiracy to defraud the government or by a conspiracy to violate a federal law.  **Tanner v. United States**, 483 U.S. 107 (1987); **United States v. Loney**, 959 F.2d 1332 (5th Cir. 1992).  The indictment charged both of these methods of violating the statute but the jury was instructed in only the latter: conspiracy to violate 18 U.S.C. § 472 and 18 U.S.C. § 1002.  Proof of intent to defraud the government is not an element of this type conspiracy.  **Loney**.  Nor is it an element of 18 U.S.C. § 472.  Accordingly, Wiley's conviction for conspiracy to violate this statute can stand without proof of intent to defraud the United States.

7

Investigation Report.  Fed.R.Crim.P. 32(c)(3)(D) requires the court to make findings with regard to allegations of factual inaccuracies in the PSR.  At sentencing, the only specific objection to the PSR raised by Wiley was that the conspiracy conviction was a misdemeanor.  This the court rejected.  He then delivered a lengthy speech in support of his "Motion to Dismiss," asserting violations of, *inter alia*, natural law, the confrontation clause, the Speedy Trial Act, the law merchant and the lack of admiralty jurisdiction.  These objections were not factual and did not relate to the PSR; the were beyond the scope of Rule 32(c)(3)(D).  This assignment of error is meritless.

4. Admission of evidence.

In his defense Wiley offered evidence that the IRS owed Hilgeford a $10 million refund against which the sight drafts were drawn.  He now claims error in the admission of evidence that the IRS froze Hilgeford's account and placed Hilgeford under investigation in response to the 1040-Form on which he claimed such a refund.

Wiley first challenges the evidence as hearsay, outside the Fed.R.Evid. 803(8) public records exception to the hearsay rule because it was offered in a criminal proceeding and concerned "matters observed by . . . law enforcement personnel."  In applying this exclusion, however, we distinguish "between law enforcement reports prepared in a routine, non-adversarial setting, and those resulting from the arguably more subjective endeavor of

8

investigating a crime and evaluating the results of that investigation."[10] Only the latter is excluded from the Rule 803(8) public records exception to Rule 802's proscription of hearsay evidence. The bare fact that Hilgeford's account was frozen and that he was under investigation is in the former category and hence is not excludable as hearsay.

Wiley also maintains that the prejudicial effect of the evidence outweighs its probative value. This objection was not raised at trial. Our review, therefore, may only be for plain error, that is, error "so fundamental as to result in a miscarriage of justice."[11] Our review of the record convinces us that admission of the evidence was not plain error. Wiley presented evidence that the IRS owed Hilgeford $10 million; in rebuttal the government was entitled to present evidence that the IRS had made no such determination. This assignment of error likewise is without merit.

The convictions and sentences are AFFIRMED.

---

[10] **United States v. Quezada**, 754 F.2d 1190, 1194 (5th Cir. 1985).

[11] **United States v. Beaumont**, 972 F.2d 91, 94 (5th Cir. 1992).