34 F.3d 1076
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Meredith Emmett BRUMFIELD, Defendant-Appellant.
 No. 93-4033.
 United States Court of Appeals, Tenth Circuit.
 Sept. 1, 1994.
 ORDER AND JUDGMENT[1]
 
 1
 Before TACHA and McKAY, Circuit Judges, and SHADUR,[2] Senior District Judge.
 
 
 2
 Meredith Emmett Brumfield was convicted on nine counts of possession of unregistered firearms in violation of 26 U.S.C. 5861(d) and 5871, and was sentenced to fifty-seven months imprisonment followed by a three-year term of supervised release. On appeal, Mr. Brumfield raises several allegations of error which we address in turn. We set out the facts as necessary to resolve the issues on appeal.
 
 
 3
 I. Entrapment and Outrageous Government Conduct
 
 
 4
 Mr. Brumfield moved pre-trial to have the indictment dismissed for outrageous government conduct, which motion was denied. On appeal, Mr. Brumfield argues that the government failed to prove beyond a reasonable doubt that Mr. Brumfield had a prior predisposition to commit the crime, as required by Jacobsen v. United States, 112 S.Ct. 1535 (1992), and that the government's conduct was so outrageous as to deprive him of his right to due process of law.
 
 
 5
 Where the jury has been instructed on an entrapment defense, the defendant bears a heavy burden in attempting to persuade an appellate court that he has been entrapped as a matter of law. United States v. Dozal-Bencomo, 952 F.2d 1246, 1250 (10th Cir.1991). This is because "the matter becomes so intertwined with the issue of intent and so 'typically based upon credibility determinations, [that it remains] an area traditionally reserved for jury resolution.' " Id. (quoting United States v. Fadel, 844 F.2d 1425, 1430 (10th Cir.1988)). We will reverse the jury's factual determination that the defendant was not entrapped only where such a determination can be made "without choosing between conflicting witnesses nor judging credibility." Id. Thus, where the jury has been properly instructed on the defense of entrapment and has found that defendant was not entrapped, we will review that conclusion only to determine whether sufficient evidence exists to support the jury's verdict. Id. The evidence, "together with the reasonable inferences to be drawn therefrom--is sufficient if, when taken in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." Id. (quoting United States v. Hooks, 780 F.2d 1526, 1531 (10th Cir.), cert. denied, 475 U.S. 1128 (1986)). Entrapment is a valid defense only where "the government deceives the defendant in such a way as to 'actually implant[ ] the criminal design' in the defendant's mind." Id. (quoting Hampton v. United States, 425 U.S. 484, 489 (1976). The government is not required to provide absolute proof of predisposition; rather, the government need only provide sufficient evidence to present a jury question as to defendant's predisposition. Id. at 1252.
 
 
 6
 The testimony supporting the jury's determination that Mr. Brumfield was not entrapped was as follows. In November 1991, the Roosevelt City Police Department commenced an undercover investigation of Mr. Brumfield. The investigation was prompted by a number of incidents involving Mr. Brumfield that led police to believe he was a danger to the community. Testimony at trial indicated that in one such instance, Mr. Brumfield spoke of "getting rid of" Mormons and of "blow[ing] that Angel Moroni off his perch," an apparent reference to the statue of the Angel Moroni atop the Salt Lake Temple. In another incident, Mr. Brumfield engaged in a conversation with Officer Ralph Draper, in which Mr. Brumfield discussed his expertise with weapons and explosives. Officer Draper testified that Mr. Brumfield spoke in particular about manufacturing car bombs.[3] (R. Vol. IV at 10-11.) Officer Draper also testified that in November 1991, he was called to a local store to investigate a report of a suspicious man. The employees of the store said that the man had spoken of car bombs and blowing up undesirable customers of the store. Officer Draper testified that the employees described the man's vehicle, which corresponded to the truck known to be driven by Mr. Brumfield.[4] Officer Draper testified that he had seen Mr. Brumfield's car outside the store earlier in the day. Officer Draper notified Roosevelt City Police Chief Gurr of the incident, and Chief Gurr in turn contacted the Bureau of Alcohol, Tobacco and Firearms. Officer Draper testified that he had previously been the target of threats from Mr. Brumfield and that Chief Gurr had asked to be notified of any contacts between Mr. Brumfield and Officer Draper.
 
 
 7
 At the request of Chief Gurr, Craig Dimick, a confidential informant recruited by the ATF, was asked to determine whether Mr.Brumfield was seriously interested in explosives. (R. Vol. IV at 29.) Mr. Dimick contacted Mr. Brumfield and asked his advice on obtaining a "package." Id. at 41. Mr. Brumfield responded by asking how many people Mr. Dimick wanted to kill. Id. Mr. Dimick asked how much money Mr. Brumfield wanted for each "package," and Mr. Brumfield responded that he would do it for $300 a piece. Id. At that point, Chief Gurr authorized Mr. Dimick to pursue the matter further. Id. at 42. Several days later, Mr. Brumfield told Mr. Dimick that the package was ready. Arrangements were made for Mr. Brumfield to meet with Mr. Dimick and an undercover agent in the parking lot of the Frontier Grill restaurant. At the meeting, Mr. Brumfield showed Mr. Dimick and the undercover agent a pipe bomb he had made, and indicated that it was sufficient to demolish a car and kill the occupants. Id. at 47. The undercover agent told Mr. Brumfield that he intended to sell the bomb to gang members in California. When the undercover agent indicated he might be interested in additional bombs, Mr. Brumfield said that he could make four or five at a time. Id. at 97. On December 20, 1991, Mr. Brumfield indicated in a conversation with Mr. Dimick that he wanted to make additional bombs. Id. at 54. At this point, neither Mr. Dimick nor any government agent had requested any more bombs from Mr. Brumfield. Id. Several days later, Mr.Brumfield complained of a lack of money to make the bombs, and after consulting with Chief Gurr, Mr. Dimick was authorized to provide a small amount of money so that Mr. Brumfield could purchase supplies. Id. at 55. Another meeting between Mr.Brumfield and the undercover agent took place on January 7, 1992. At this meeting, the undercover agent indicated that the first bomb had been sold to California gang members, and that he thought that he might be able to sell the additional bombs Mr. Brumfield had made to the same people. Id. at 59-60, 103-04. Mr. Brumfield then grinned and said, "Well a lot of innocent people are going to get blown up." Id. at 66, 104. Mr. Brumfield delivered five more bombs and received $350 from the undercover agents, who told him not to make any more. Id. at 67, 102. The undercover agents then asked Mr. Brumfield to make silencers for Uzi submachine guns in an attempt to divert Mr. Brumfield's activities toward less dangerous activities. On January 19, 1992, Mr. Brumfield told Mr.Dimick that he had enough supplies for two or three more bombs, if a buyer could be found. Mr. Dimick obtained permission to tell Mr. Brumfield to proceed. Id. at 67. On February 5, 1992, the undercover agents purchased three more bombs from Mr. Brumfield for $300.
 
 
 8
 After reviewing the record, we conclude that there was sufficient evidence to justify the trial court's decision to allow the entrapment issue to go to the jury, and there is sufficient evidence such that the jury could properly find that defendant was not entrapped. Accordingly, we cannot conclude as a matter of law that Mr. Brumfield was entrapped. Nor can we conclude that the government engaged in such outrageous conduct as to deprive Mr.Brumfield of due process of law. See United States v. Mosley, 965 F.2d 906, 908 (10th Cir.1992). A claim of outrageous conduct is "manifestly reserved for only the most intolerable government conduct." United States v. Perez, 959 F.2d 164, 170 (10th Cir.1992) (internal quotation omitted), aff'd en banc in pertinent part, 989 F.2d 1574, 1577 (10th Cir.1993). In this case, the government merely suggested the illegal conduct in this case and did not coerce Mr. Brumfield into manufacturing the bombs. See United States v. Biswell, 700 F.2d 1310, 1313-14 (10th Cir.1983). The government's conduct in this case was not such as would constitute a deprivation of Mr. Brumfield's right to due process of law.
 
 
 9
 II. Unfair Prejudice and Improper Prosecutorial Comments
 
 
 10
 Mr. Brumfield argues that testimony as to the extent of the injuries and damages that would be sustained were one of the devices Mr. Brumfield manufactured to explode in the courtroom was unfairly prejudicial. Over an objection by Mr. Brumfield's counsel, Officer Ray Dalling testified that "[a] lot of people would be injured or killed. There would be major structural damage to the building." (R. Vol. III at 32-33.) The trial court overruled Mr. Brumfield's objection, a ruling we review for abuse of discretion. See United States v. Harrison, 942 F.2d 751, 759 (10th Cir.1991). We find no abuse of discretion, especially in light of the far more graphic testimony of ATF Agent Caponio, to which Mr. Brumfield did not object. (R. Vol. III at 40-41.)
 
 
 11
 Mr. Brumfield also argues that certain comments made by the prosecutor during his closing argument were improper and unfairly prejudicial. Specifically, Mr. Brumfield points to the prosecutor's statement recalling the above-noted testimony as to the damage and injuries that would be sustained were one of the devices manufactured by Mr. Brumfield to explode in the courtroom, as well as the prosecutor's statement that Mr. Brumfield had told Officer Draper "how he could create pipe bombs and destructive devices, and how they worked; how you could take a bomb and tie it with wires into the rear lights so that when the person hit his brakes, it would explode." (R. Vol. V at 10.) Mr. Brumfield did not object to the prosecutor's statements during closing arguments. Accordingly, we review those statements only for plain error. United States v. Santiago, 977 F.2d 517, 520 (10th Cir.1992). After reviewing the record, we conclude that the statements complained of were proper comments on the evidence and did not constitute plain error.
 
 III. Denial of Motion for New Trial
 
 12
 Mr. Brumfield moved for a new trial based upon newly discovered evidence relating to the prior institutionalization in a state mental hospital of the confidential informant, Mr. Dimick. We review for an abuse of discretion the denial of a motion for new trial. United States v. Davis, 1 F.3d 1014, 1016 (10th Cir.1993). Mr. Brumfield argues that the new evidence would seriously impeach Mr. Dimick's credibility. We have previously held that a motion for a new trial in a criminal case is "not regarded with favor and should be granted only with great caution," United States v. Youngpeter, 986 F.2d 349, 356 (10th Cir.1993) (quoting United States v. Sutton, 767 F.2d 726, 728 (10th Cir.1985)), and in order for newly discovered evidence to warrant a new trial, the evidence "must be more than impeaching or cumulative; it must be material to the issues involved; it must be such that it would probably produce an acquittal." Id. The trial court concluded that the evidence would be useful only for impeachment, would be cumulative in light of the testimony by two of Mr. Brumfield's witnesses that Mr. Dimick was a liar, and was not of the type likely to produce an acquittal in light of the additional evidence supporting the conviction. (R. Vol. I Doc. at 3-5.) We find no abuse of discretion.
 
 
 13
 Mr. Brumfield also argued that the government's failure to disclose the evidence of Mr. Dimick's mental problems violated the rule of Brady v. Maryland, 373 U.S. 83 (1963). The trial court was unable to determine whether the government was aware of Mr. Dimick's prior institutionalization, but concluded that in any event there was no reasonable probability that the evidence would produce an acquittal. (R. Vol. I Doc. 84 at 7.) We agree, and conclude that since "the evidence sought to impeach [the witness] did not materially affect the ultimate outcome, there is no reversible error." United States v. Abello-Silva, 948 F.2d 1168, 1179 (10th Cir.1991), cert. denied, 113 S.Ct. 107 (1992).[5]
 
 IV. Enhancement of Sentence
 
 14
 Mr. Brumfield was sentenced to fifty-seven months imprisonment, based on a total offense level of 25 and a criminal history category of I. Mr. Brumfield's offense level of 25 included a four-level enhancement pursuant to U.S.S.G. 2K2.1(b)(5). That section provides:
 
 
 15
 If the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels. If the resulting offense level is less than level 18, increase to level 18.
 
 
 16
 U.S.S.G. 2K2.1(b)(5) (1991 ed.). In reviewing a sentence under the Sentencing Guidelines, we review the trial court's findings of fact for clear error, while the trial court's conclusions of law are reviewed de novo. United States v. Gomez-Arrellano, 5 F.3d 464, 465 (10th Cir.1993). The evidence at trial tended to show that Mr. Brumfield was aware that the bombs he manufactured were going to be sold to gang members in California, and that they would be used to kill people. Accordingly, the four-level enhancement under 2K2.1(b)(5) was properly applied in calculating Mr. Brumfield's offense level.
 
 
 17
 AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Honorable Milton I. Shadur, Senior United States District Judge, United States District Court for the Northern District of Illinois, sitting by designation
 
 
 [3]
 Mr. Brumfield argues that this statement was improperly admitted because it was in response to a leading question by the prosecution. The district court concluded the question was not leading (R. Vol. IV at 11), and we agree. The statement was therefore properly admitted
 
 
 [4]
 Mr. Brumfield objected at trial to the testimony relating to what the store employees told Officer Draper on the ground that it was hearsay. (R. Vol. IV at 12.) The prosecution responded that the testimony was offered only as a factual account of what prompted Officer Draper's investigation, and not for the truth. Id. The trial court overruled the objection, a ruling we review for an abuse of discretion. Durtsche v. American Colloid Co., 958 F.2d 1007, 1011 (10th Cir.1992). We find no abuse of discretion
 
 
 [5]
 Mr. Brumfield's final argument on the merits is that the statutes under which he was convicted, 26 U.S.C. 5561(d) and 5871, are unconstitutional under the Second Amendment. This argument is without merit. See United States v. Oakes, 564 F.2d 384 (10th Cir.1977), cert. denied, 435 U.S. 926 (1978); United States v. Ross, 695 F.2d 1356 (10th Cir.1982), cert. denied, 464 U.S. 836 (1983)