**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 13 1997**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ARTHUR A. GONZALES,

Defendant-Appellant.

No. 96-4120
(D.C. No. 95-CR-241)
(D. Utah)

ORDER AND JUDGMENT[*]

Before BRISCOE, LOGAN, and LUCERO, Circuit Judges.

Defendant Arthur A. Gonzales appeals his conviction after a jury trial on one count

of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

Defendant argues that: (1) application of 18 U.S.C. § 922(g) to the instant case was

unconstitutional; (2) there was insufficient evidence that he possessed the handgun;

(3) the jury was not properly instructed on the standard for finding whether he possessed

the gun; and (4) the racial composition of the jury violated his Sixth Amendment right to

a jury trial.

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

# I

Defendant was on probation at the time of his arrest and was not allowed to possess a firearm or alcoholic beverages. Defendant's probation officer, Tracy Smith, and her partner, Kevin Pepper, went to defendant's apartment to conduct a home visit. Erica Somsen, defendant's live-in girlfriend, answered the door. After the probation officers entered the apartment they noticed bottles of alcohol. When defendant came into the living room area, officer Smith asked to look around the apartment and defendant agreed.

Officer Pepper checked the closet in the master bedroom and found women's clothes on one side and men's clothes on the other side. He patted down the men's clothes and found something hard in a dark jacket. He removed the jacket, reached inside the pocket and found a pistol and an ammunition clip between the lining and the outer material. Pepper took the gun and the jacket to the living room area and asked defendant to whom the gun and jacket belonged.

Pepper testified that defendant said he did not know who the gun belonged to and that it was not his jacket; defendant then said the jacket belonged to Erica's brother, Brent. Officer Smith testified that defendant said that he sometimes wore Brent's clothes. Smith also testified that when defendant visited her office he often wore a black leather jacket very similar to the one in the closet, and that she had a picture of him in that jacket.

Erica Somsen testified that she told officer Pepper that she did not know who owned the jacket. She testified that Brent and other members of her family, as well as defendant's friends, frequently stayed overnight in the apartment. Somsen also testified that defendant used to wear a leather jacket but it was stolen before the incident at issue. She identified photos of defendant wearing that jacket and said it was not the jacket the officers seized. She testified she did not know how the leather jacket got in the closet.

Defendant testified that the leather jacket in the closet was not his and that he had never worn it. He assumed it was Brent's, although he also had several friends from work who might have stayed over and left clothes in his apartment. He testified, however, that he asked everyone who had been in the apartment, including Brent, whether it was their jacket and no one claimed it. He testified that he had seen Brent shortly before the trial and could not explain why he would not testify that the coat and gun were his even though it was not unlawful for Brent to possess a firearm.

An agent of the Bureau of Alcohol, Tobacco and Firearms examined the gun and testified that it was manufactured in Belgium and had originally been imported to Missouri by a Utah company. He testified that the Bureau could not trace the firearm to its last owner.

II

Defendant contends that 18 U.S.C. § 922(g) is unconstitutional as applied to the instant case. First, he asserts there was insufficient evidence that his possession of the firearm had an effect upon interstate commerce as required by the Supreme Court's decision in United States v. Lopez, 514 U.S. 549 (1995).

In United States v. Bolton, 68 F.3d 396 (10th Cir. 1995), cert. denied, 116 S. Ct. 966 (1996), we stated that in order to meet the Commerce Clause jurisdictional requirement under Lopez, "all the government need show is a de minimis effect on interstate commerce." Bolton, 68 F.3d at 399 (rejecting a facial challenge to the Hobbs Act). In United States v. Farnsworth, 92 F.3d 1001, 1006 (10th Cir. 1996), cert. denied, 117 S. Ct. 596 (1996), we held that evidence that a firearm was manufactured in another state, and thus had crossed state lines, established the required de minimis effect on interstate commerce. Defendant acknowledges these cases; however, he argues that because the gun in the instant case may not have moved across state lines after it was imported more than fifty years ago the effect of his possession on interstate commerce was somehow less than de minimis. But "'[s]ection 922(g)'s requirement that the firearm have been, at some time, in interstate commerce is sufficient to establish its constitutionality under the Commerce Clause,' Bolton, 68 F.3d at 400 (citation omitted), and the de minimis effect of [defendant's] own actions on interstate commerce does not invalidate his conviction." Farnsworth, 92 F.3d at 1006 (emphasis added).

- 4 -

Defendant makes a second argument that § 922(g) is unconstitutional because it did not give him adequate notice that possessing the imported firearm would be considered to affect interstate commerce. This vagueness argument also fails. The phrase "possess[ing] in or affecting commerce" in § 922(g) has consistently been construed to include importation into a state as an "indispensable element." International Text-book Co. v. Pigg, 217 U.S. 91, 107 (1910). The statute gives "fair warning" that being a felon in possession of a weapon that had been imported into a state constitutes criminal conduct. See United States v. Bass, 404 U.S. 336 (1971).

III

Defendant argues that the government presented insufficient evidence that he possessed the handgun. Defendant points out that officer Pepper found the gun in a jacket in an apartment defendant jointly occupied with his girlfriend. He relies on our holding in United States v. Mills, 29 F.3d 545, 550 (10th Cir. 1994), that "the mere control or dominion" over the place in which contraband or an illegal item is found was not enough to establish constructive possession in a joint occupancy situation. In Mills, we held that constructive possession could not be inferred when defendant's joint occupant testified she placed guns in a compartment without defendant's knowledge. Here, however, more than mere joint occupancy occurred: defendant was the only male residing in the apartment; the jacket was in his side of the closet; and he had worn a

similar black jacket to probation meetings.[1]  There was sufficient evidence for a jury to find that defendant was in possession of the gun.

IV

Defendant also argues that he was entitled to a specific instruction, based on <u>Mills</u>, that when there is dual occupancy mere dominion and control of the area where the weapon was found are not enough.  We review jury instructions de novo to ascertain whether the instructions as a whole correctly state the applicable law and provide the jury an adequate understanding of the issues.  We reverse only if failure to give a proffered instruction was prejudicial in light of the entire record.  <u>United States v. Cecil</u>, 96 F.3d 1344, 1347 (10th Cir. 1996), <u>cert.</u> <u>denied</u>, 117 S. Ct. 987 (1997).

The jury here was correctly instructed on the statutory elements, including that the firearm must be "knowingly possessed."  I R. doc. 43, Instr. Nos. 11 and 12.  "Knowingly" was defined in a separate instruction as follows:

> An act is done "knowingly" if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

---

[1]  We have reviewed defendant's supplemental record including pictures of the jacket he wore to the probation meetings (Defendant's Ex. D).  Unfortunately, the actual jacket seized (Gov't Ex. 6) apparently has been destroyed; thus we are not able to compare the jackets.  But even if defendant correctly asserts that the jacket in which he was photographed was different than the jacket containing the gun, this does not compel the conclusion that defendant did not own or use the jacket containing the gun.

The purpose of adding the word "knowingly" is to insure that no one will be convicted for an act done because of mistake, or accident, or other innocent reason.

Id. Instr. 18. The jury was also instructed that

To possess means to have something within your control. This does not necessarily mean that you must hold it physically, that is, have actual physical possession of it. As long as the firearm is within your control, you possess it. If you find that the defendant either had actual possession or had the power and ability to control the firearm, even though it may not have been in the physical possession of the defendant, you may find that the government has proved possession.

Proof of ownership is not required. Nor is the government required to prove that at the time of the possession the defendant knew that he was breaking the law. It is sufficient if you find that the defendant possessed the firearm voluntarily and not by accident or mistake. You also must find that the defendant knew he was possessing a firearm.

Id. Instr. No. 14 (emphasis added). The instructions as a whole correctly set forth the law, see United States v. Capps, 77 F.3d 350, 352 (10th Cir.), cert. denied, 116 S. Ct. 2568 (1996); the district court did not err in refusing to give a more specific instruction.


V

Finally, defendant raised the possibility that he was denied his Sixth Amendment right to a trial by a jury of his peers because there were no members of minority races on the jury. In his brief and at oral argument, however, defendant acknowledged that no

factual or legal basis existed to challenge the racial composition of the jury.  Even assuming that defendant did not waive that argument, we agree that there was no basis for him to challenge the racial composition of the jury.

AFFIRMED.

Entered for the Court

James K. Logan
Circuit Judge