**UNITED STATES of America,
Plaintiff,**

v.

**James L. BOYD III, Defendant.**

No. 99–40001–01–SAC.

United States District Court,
D. Kansas.

March 30, 1999.

**1234**

Randy M. Hendershot, Office of United States Attorney, Topeka, KS, for U.S.

Ronald E. Wurtz, Office of Federal Public Defender, Topeka, KS, for defendant.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

The case comes before the court on the defendant's following pretrial motions: Motion to Dismiss Indictment Due to Officially Inadequate Commerce Clause Nexus, Ex Post Facto Clause Violation, Second Amendment Violation, and Equal Protection Violation (Dk.23); and Motion to Dismiss or to Elect Because of Duplicitous Charging (Dk.25). The government has filed a consolidated response opposing both motions. (Dk.27). The defendant filed a notice of supplementary authority (Dk.30) on March 25, 1999, calling the court's attention to the recent decision of *Brzonkala v. Virginia Polytechnic Institute*, 169 F.3d 820 (4th Cir.1999).

## INDICTMENT

On January 6, 1999, the grand jury returned a two-count indictment charging the defendant with two violations of 18 U.S.C. § 922(g)(9), that is, possession of a firearm by a person convicted of a misdemeanor crime of domestic violence. Count one charges that the defendant knowingly and intentionally received and possessed a .9mm semi-automatic pistol on May 30, 1998, after having been convicted on March 31, 1995, in Shawnee County, Kansas, of a misdemeanor crime of domestic violence. Count two charges that the defendant knowingly and intentionally received and possessed a .380 caliber semi-automatic pistol on August 24, 1998, after having been convicted on March 31, 1995, in Shawnee County, Kansas, of a misdemeanor crime of domestic violence. Each count charges that the respective firearm "had been shipped or transported in interstate or foreign commerce." (Dk.1).

## MOTION TO DISMISS ON CONSTITUTIONAL GROUNDS (Dk.23).

*Interstate Commerce Clause Challenge*

The defendant's argument relies extensively on *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), in which the Supreme Court held that Congress exceeded its interstate commerce powers by criminalizing the knowing possession of a firearm in a school zone, 18 U.S.C. § 922(q) (1988). The Court noted that among its precedent even "the most far reaching example of Commerce Clause authority over intrastate activity, involved economic activity in a way that the possession of a gun in a school zone does not." 514 U.S. at 560, 115 S.Ct. 1624. The defendant keys on this observation and the Court's conclusion that § 922(q) had "nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms." 514 U.S. at 561, 115 S.Ct. 1624. The defendant criticizes the lower court opinions subsequently applying *Lopez* as having narrowly construed *Lopez* and having failed to address this aspect of the Supreme Court's opinion. The defendant cites the following as examples of such lower court opinions: *United States v. Bolton*, 68 F.3d 396 (10th Cir.1995); *United States v. Hicks*, 992 F.Supp. 1244 (D.Kan. 1997); *National Ass'n of Government Employees, Inc. v. Barrett*, 968 F.Supp. 1564, 1572 (N.D.Ga.1997); *Fraternal Order of Police v. United States*, 981 F.Supp. 1 (D.D.C.1997), *overruled on other grounds,*

152 F.3d 998 (D.C.Cir.1998); *Gillespie v. City of Indianapolis*, 13 F.Supp.2d 811 (S.D.Ind.1998). The defendant argues that § 922(g)(9) focuses not on the weapon and its movement in interstate commerce but rather on the regulation of domestic violence which has nothing to do with commerce. In short, the defendant contends it is not enough that the statute expressly makes interstate commerce an element of the crime.

If it were writing on a clean slate, this court might have more reason to discuss at length the defendant's arguments.[1] The slate, however, is not clean, and the court is bound to follow the Tenth Circuit precedent of *United States v. Farnsworth*, 92 F.3d 1001, 1006 (10th Cir.1996) (" '[U]nder *Lopez*, all the government need show is a *de minimis* effect on interstate commerce in order to support a conviction under the [Hobbs] Act.' " (citation omitted); *United States v. Snow*, 82 F.3d 935, 939–40 (10th Cir.1996) ("[S]imply by crossing state lines the firearm traveled in interstate commerce."; *United States v. Bolton*, 68 F.3d 396, 399 (10th Cir.1995), *cert. denied*, 516

U.S. 1137, 116 S.Ct. 966, 133 L.Ed.2d 887 (1996); *see, e.g., United States v. Gonzales*, 114 F.3d 1198, 1997 WL 321550, at *2 (10th Cir. Jun.13, 1997) (Table). Though these precedent do not address the interstate commerce nexus within the particular context § 922(g)(9), they do address that nexus in other § 922(g) provisions and their reasoning cannot be distinguished on any legally relevant ground. In fact, § 922(g) imposes the same jurisdictional element for the nine different disabling statuses (*e.g.*, felony conviction, fugitive from justice, illegal alien, unlawful user of controlled substance, and misdemeanor domestic violence conviction) listed in § 922(g)(1)–(9). Specifically, the statute makes it unlawful for a person fitting one of the nine listed statuses "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm ... or to receive any firearm ... which has been shipped in interstate commerce." 18 U.S.C. § 922(g). This common jurisdictional element defeats the defendant's commerce clause challenge.[2] *See, e.g., United States v. Bos-*

---

**1.** This federal court is as sensitive as the next to the federalization of crimes. If an express jurisdictional element that the firearm move in interstate commerce at any point in time is enough to satisfy the commerce clause, then it is hard to imagine what activity that Congress could not regulate as a disabling status. The court plainly understands that § 922 criminalizes only firearm possession, but in deciding who may not possess a firearm Congress is necessarily regulating the activity associated with the disabling status. Indeed, members of Congress plainly were driven to pass § 922(g)(9) out of their concern for the number of murders committed during domestic assaults, out of their opinion that "[o]utdated or ineffective laws often treat domestic violence as a lesser offense" and that the domestic violence offenders are able to plea bargain their felony offenses to misdemeanors, and out of their hope that this statutory prohibition would reduce the number of people murdered in these circumstances. *See* 142 Cong. Rec. S10379–01 (daily ed. Sep. 12, 1996) (statements of Sen. Murray and Sen. Feinstein); 142 Cong.Rec. S11872–01, at *S11872 (daily ed. Sep. 30, 1996) (statement of Sen. Lautenberg); *see also* 142 Cong.Rec. S10377–01, at *S10377 (daily ed. Sep. 12, 1996)

(statement of Sen. Lautenberg criticizing the state criminal justice system as not treating domestic violence as a serious crime). From its reading of this limited legislative history, the court's unmistakable impression is that the Lautenberg Amendment was an effort to regulate serious domestic violence, because the state criminal justice systems were perceived as ineffective, too lenient, and outdated. The court is troubled when Congress can use the minimal interstate feature of firearms as a pretext for regulating activity that traditionally and historically has been considered a crime to be regulated by the states.

**2.** The defendant's notice of supplementary authority refers to the Fourth Circuit's recent opinion in *Brzonlaka* but does not analyze it. Nothing in that opinion appears to warrant a departure from controlling precedent. Indeed, the Fourth Circuit said that: "Because [42 U.S.C. § ] 13981 neither regulates an economic activity nor includes a jurisdictional element, it cannot be upheld on the authority of *Lopez* or any other Supreme Court holding demarcating the outer limits of Congress' power under the substantially affects test." *Brzonkala*, 169 F.3d 820, 836 (citation omitted).

*tic,* 168 F.3d 718, 722 (4th Cir.1999) (upholding § 922(g)(8)—unlawful possession of a firearm by an individual subject to a domestic violence protective order); *United States v. Wilson,* 159 F.3d 280, 286–87 (7th Cir.1998) (upholding § 922(g)(8)).

All of these cases have recognized that central to the Supreme Court's holding in *Lopez* was the "lack of a 'jurisdictional element which would ensure, through a case-by-case inquiry, that the firearm possession in question affects interstate commerce.'" *United States v. Luna,* 165 F.3d 316, 320 (5th Cir.1999) (quoting *Lopez,* 514 U.S. at 561, 115 S.Ct. 1624); *see United States v. Cunningham,* 161 F.3d 1343 (11th Cir.1998) ("[A] statute regulating noneconomic activity *necessarily satisfies Lopez* if it includes a 'jurisdictional element which would ensure, through case-by-case inquiry,' that the defendant's particular offense affects interstate commerce." (quoting *Lopez,* 514 U.S. at 561, 115 S.Ct. 1624) (internal citations omitted)). "Unlike the statute at issue in *Lopez,* § 922(g) expressly requires some nexus to interstate commerce, reflecting the ability of Congress to exercise its delegated power under the Commerce Clause to reach the possession of firearms that have an explicit connection with or effect on interstate commerce." *United States v. Luna,* 165 F.3d at 321 (footnote omitted); *see Lopez,* 514 U.S. at 561, 115 S.Ct. 1624 ("Section 922(q) has no express jurisdictional element which might limit its reach to a discrete set of firearm possessions that additionally have an explicit connection with or effect on interstate commerce."). Thus, it should come as no surprise that Commerce Clause challenges to § 922(g)(9) have had no success. *See, e.g., United States v. Mendoza,* 1999 WL 89377, at *1 (4th Cir. Feb.23, 1999); *Gillespie v. City of Indianapolis,* 13 F.Supp.2d 811, 821–22 (S.D.Ind.1998). Nor will this challenge prevail here.

Within his Commerce Clause challenge, the defendant weaves certain Tenth Amendment arguments and even comments that "[t]he major questions that arise in the interstate commerce area are the overarching Tenth Amendment issues." (Dk.24, p. 6). Most of this argument is aimed at giving *Lopez* a broad reading that would reject any federal criminal statute regulating traditional intrastate matters which really have little to do with business and commerce. (Dk.24, p. 9–10). Even so, if the defendant intended to make a separate Tenth Amendment challenge to § 922(g)(9), the court rejects the same based on sound reasoning found in *United States v. Bostic,* 168 F.3d 718, 1999 WL 74754, at *6 (§ 922(g)(8)); *United States v. Wilson,* 159 F.3d at 287–88 (§ 922(g)(8)); and *Gillespie v. City of Indianapolis,* 13 F.Supp.2d at 819–21 (§ 922(g)(9)). In short, the court is compelled by binding precedent to find that § 922(g)(9), just like the other provisions of § 922(g), is a constitutional exercise of Congress's commerce power, and the court is convinced that § 922(g)(9) can be implemented by federal authorities without impermissibly infringing on the States' rights to regulate domestic relations.

*Ex Post Facto Challenge*

" 'A law violates the Ex Post Facto Clause when it punishes behavior which was not punishable at the time it was committed or increases the punishment beyond the level imposed at the time of commission.'" *United States v. Capps,* 77 F.3d 350, 354 (10th Cir.1996) (quoting *Stephens v. Thomas,* 19 F.3d 498, 500 (10th Cir.1994)). The defendant argues that § 922(g)(9) alters the definition of criminal conduct, increases the punishment for an earlier crime, and attaches unforeseeable consequences to a completed criminal case.

This court, as have all others deciding such a challenge, have concluded that because the illegal act in § 922(g)(9) is the possession of the firearm, not the misdemeanor domestic violence conviction, the illegal act was not completed until after § 922(g)(9) became effective. *See, e.g., United States v. Frye,* 163 F.3d 599, 1998 WL 654423, at *1 (4th Cir. Sep.21, 1998) (table); *United States v. Hicks,* 992 F.Supp. 1244, 1246 (D.Kan.1997); *United*

*States v. Meade,* 986 F.Supp. 66, 69 (D.Mass.1997); *National Ass'n of Government Employees v. Barrett,* 968 F.Supp. 1564, 1575–76 (N.D.Ga.1997). Consequently, this statute does not impose a heavier or additional penalty for the earlier domestic violence conviction, but rather imposes authorized punishment for criminal conduct that has occurred after the passage of the law. *See United States v. Farmer,* 73 F.3d 836, 841 (8th Cir.1996). The defendant cites no legal authority, for the proposition that it must have been foreseeable to him at the time of his domestic violence conviction that Congress would create a disabling status based on this conviction. Indeed, such a claimed right far exceeds what are recognized as a defendant's due process rights. As this court said in *Hicks,* " § 922(g)(9) plainly sets forth the conduct which it prohibits and to whom it applies." 992 F.Supp. at 1246. The defendant's ex post facto challenge fails.

*Second Amendment Challenge*

■ The defendant argues that the application of a firearm disabling statute to those convicted of misdemeanor crimes of domestic violence violates the Second Amendment to the United States Constitution. In the defendant's opinion, a misdemeanor crime of domestic violence provides an insufficient basis for depriving a person of his right to keep and bear arms. The defendant summarily contests the Supreme Court precedent which arguably restrict this right to militia matters and, alternatively, argues that 18 U.S.C. § 922(g)(9) even fails the most permissive "rational basis" review standard.

In *United States v. Oakes,* 564 F.2d 384, 387 (10th Cir.1977), the court held that "[t]o apply the [Second] [A]mendment so as to guarantee appellant's right to keep an unregistered firearm which has not been shown to have any connection to the militia, . . ., would be unjustifiable in terms of either logic or policy." Relying on *Oakes,* the Tenth Circuit has summarily rejected all subsequent Second Amendment challenges. *See, e.g., United States*

*v.. Rose,* 695 F.2d 1356, 1359 (10th Cir. 1982); *United States v. Brumfield,* 34 F.3d 1076, 1994 WL 475030, at *4 (10th Cir. Sept.1, 1994) (table). In *Lewis v. United States,* 445 U.S. 55, 65 n. 8, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), the Supreme Court held:

> These legislative restrictions on the use of firearms [prohibiting a felon's possession of firearms] are neither based upon constitutionally suspect criteria, nor do they trench upon any constitutionally protected liberties. *See United States v. Miller,* 307 U.S. 174, 178, 59 S.Ct. 816, 83 L.Ed. 1206 (1939) (the Second Amendment guarantees no right to keep and bear a firearm that does not have "some reasonable relationship to the preservation or efficiency of a well regulated militia"); *United States v. Three Winchester 30–30 Caliber Lever Action Carbines,* 504 F.2d 1288, 1290 n.t (7th Cir.1974); *United States v. Johnson,* 497 F.2d 548 (4th Cir.1974); *Cody v. United States,* 460 F.2d 34 (8th Cir.), *cert. denied,* 409 U.S. 1010, 93 S.Ct. 454, 34 L.Ed.2d 303 (1972) (the latter three cases holding, respectively, that § 1202(a)(1), § 922(g), and § 922(a)(6) do not violate the Second Amendment.)

445 U.S. at 65 n. 8, 100 S.Ct. 915. The defendant has not presented this court with any argument that could justify this court departing from this binding precedent.

*Equal Protection*

■ The defendant argues first that he has a fundamental right to keep and bear arms under the Ninth and Second Amendments. This position is not supported by the case law. In *Lewis,* the Supreme Court said that the federal "firearm regulatory scheme is consonant with the concept of equal protection . . . if there is 'some "rational basis" for the statutory distinctions made . . . or . . . they "have some relevance to the purpose for which the classification is made." ' " 445 U.S. at 65, 100 S.Ct. 915. Besides *Lewis,* other courts also have relied on the rational ba-

sis standard in evaluating criminal statutes that disabled certain classes from possessing firearms. *See, e.g., United States v. Jester*, 139 F.3d 1168, 1171 (7th Cir.1998) (challenge to §§ 922(g)(1) and 921(a)(20)(A) for exempting some felonies from the prohibition in § 922(g)(1)); *United States v. Phelps*, 17 F.3d 1334, 1343–44 (10th Cir.1994) (challenge to §§ 924(e) and 921(a)(20) for allowing disparate state laws dictate what constitutes a conviction) to determine what is *United States v. Phetchanphone*, 863 F.Supp. 1543, 1546–47 (D.Utah 1994) (challenge to § 922(g) offense and citing *United States v. Henry*, 504 F.2d 1335 (10th Cir.1974) ("Statute prohibiting possession of a firearm by a felon has a reasonable basis for its restriction.")). Because the statutory classification here does not involve a suspect class or bear on a fundamental right, § 922(g)(9) will be upheld if it is "rationally related to a legitimate government objective." *United States v. Phelps*, 17 F.3d at 1344 (quotation omitted); *see United States v. Jones*, 37 F.3d 1510, 1994 WL 563444, at *1 (10th Cir. Oct.14, 1994) (Table) (rejecting an equal protection challenge to § 922(g) relying on *United States v. Sherbondy*, 865 F.2d 996, 1003 (9th Cir.1988), which in turn relied on *Lewis v. United States*, 445 U.S. at 66, 100 S.Ct. 915).

"Legislative penalties imposed on certain classes of persons must 'rest on real and not feigned differences,' must 'have some relevance to the purpose for which the classification is made,' and must not subject the class members to wholly arbitrary treatment." *United States v. McKenzie*, 99 F.3d 813, 817 (7th Cir.1996). To prevail on his challenge, the defendant must establish "that no 'state of facts reasonably may be conceived to justify' the disputed classification." *United States v. Jester*, 139 F.3d at 1171 (quoting *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970)); *United States v. Castillo*, 140 F.3d 874, 883 (10th Cir.1998) ("[I]f there is a 'plausible reason[ ] for Congress' action, our inquiry is at an end.'" *United States R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 179, 101

S.Ct. 453, 66 L.Ed.2d 368 (1980)). "[U]nder rational basis review, we will not invalidate a challenged distinction 'simply because the classification is not made with mathematical nicety or because in practice it results in some inequality.... The problems of government are practical ones and may justify, if they do not require, rough accommodations....'" *United States v. Jester*, 139 F.3d at 1171 (quoting *Dandridge v. Williams*, 397 U.S. at 485, 90 S.Ct. 1153).

The defendant's only equal protection argument.is based on the public interest exception in 18 U.S.C. § 925 which was successful in *Fraternal Order of Police v. United States*, 152 F.3d 998, 1002–03 (D.C.Cir.1998), *reh'g granted*, 159 F.3d 1362 (D.C.Cir. Nov.12, 1998). The remedy granted in that decision was to hold " § 925 unconstitutional insofar as it purports to withhold the public interest exception from those convicted of domestic violence misdemeanors." 152 F.3d at 1004. The court does not appreciate how that decision or its remedy has any applicability to the present case. For that matter, the defendant has presented no argument or evidence that even suggests the public interest exception could apply here. Unless the public interest exception is involved in the charged conduct here, the defendant is without standing to raise a claim that Congress violated his equal protection rights by irrationally excluding domestic violence misdemeanors from the public interest exception. *See United States v. Jester*, 139 F.3d at 1172. The court finds the defendant lacks standing to challenge § 922(g)(9) on the equal protection grounds argued here.

## MOTION TO DISMISS OR TO ELECT BECAUSE OF DUPLICITOUS CHARGING (Dk.25).

█ Noting that each count of the indictment charges him with receiving and with possessing a firearm, the defendant argues that "the elements of each are combined in such a fashion that the defendant cannot ascertain charges intended by the

government." (Dk.25, p. 3). The indictment here charges in both counts that the defendant "did knowingly and intentionally receive and possess in and affecting commerce a firearm." Although citing and discussing general case law on duplicity, the defendant cites none of the case law relevant to this particular issue. The government correctly argues that each count alleges only one crime and further specifies the commission to have occurred in either of two possible means.

In *United States v. Love,* No. 96–40004–01–SAC, 1996 WL 455024 (D.Kan. Jul.11, 1996), the defendant facing § 922(g)(1) charges argued the indictment was duplicitous in charging both unlawful receipt and unlawful possession of a firearm. The defendant's argument in the instant case is no different. For the reasons fully discussed in *Love,* the court rejects the defendant's argument here. In short, each count "charges the commission of a single offense by different means, and thus is not duplicitous." *Love,* 1996 WL 455024, at *2 (quoting *United States v. Wesley,* 918 F.Supp. 81, 87 (W.D.N.Y.1996)) (quoting in turn *United States v. Austin,* 99 F.R.D. 292, 299–300 (W.D.Mich.1983)); *see also United States v. Wiley,* 979 F.2d 365, 368 (5th Cir.1992); *United States v. Buchmeier,* 1997 WL 695678, at *1–*2 (N.D.Ill. Nov.4, 1997). "[A]'crime denounced in the statute disjunctively may be alleged in an indictment in the conjunctive, and thereafter proven in the disjunctive.'" *United States v. Parrish,* 925 F.2d 1293, 1297 (10th Cir.1991) (quoting *United States v. Gunter,* 546 F.2d 861, 868–69 (10th Cir. 1976), *cert. denied,* 430 U.S. 947, 97 S.Ct.

1583, 51 L.Ed.2d 794 (1977)). The defendant's challenge is without merit.[3]

IT IS THEREFORE ORDERED that the defendant's Motion to Dismiss Indictment Due to Officially Inadequate Commerce Clause Nexus, Ex Post Facto Clause Violation, Second Amendment Violation, and Equal Protection Violation (Dk.23) is denied;

IT IS FURTHER ORDERED that the defendant's Motion to Dismiss or to Elect Because of Duplicitous Charging (Dk.25) is denied.

---

**3.** The defendant argues some confusion over the indictment's wording of the interstate commerce element when § 922(g) describes this element in one way for possession of a firearm and another way for receipt of a firearm. The defendant says this interstate commerce element is different depending on the manner of commission, but he cites not a single case in support of this proposition. It appears enough to satisfy the interstate commerce element for receipt or possession that the firearm at some time traveled in interstate commerce. *See, e.g., United States v. Sanders,*

35 F.3d 61, 62 (2nd Cir.1994) (" 'It is sufficient that the firearm allegedly possessed or received by the defendant had at some point previously traveled across a state line.' " (quoting *United States v. Carter,* 981 F.2d 645, 647 (2nd Cir.1992), *cert. denied,* (1993)); *United States v. Wesley,* 918 F.Supp. 81, 86 (W.D.N.Y.1996). The government's blended wording of the interstate commerce element in counts one and two is sufficient, as it adequately states that element and fairly informs the defendant of the charge he must defend.